Abe Wolkowitz et al., [1] v. Commissioner. Wolkowitz v. Commissioner
Docket Nos. 15249, 15250, 15251, 15254, 15256, 15257.
United States Tax Court
1949 Tax Ct. Memo LEXIS 101; 8 T.C.M. (CCH) 754; T.C.M. (RIA) 49212; August 25, 1949
*101 1. Upon the evidence, held, that the respondent did not err in determining that the sales of the petitioner corporation for the fiscal year ended March 31, 1941, were understated in the amount of $25,772.21. 2. Upon the evidence, held, the reasonable compensation for each of the officers of the petitioner corporation for the fiscal year ended March 31, 1941, to be allowed as a deduction as found. 3. Upon the evidence, held, that the respondent erred in disallowing certain deductions by the corporation for the fiscal year ending March 31, 1941, as legal expenses. 4. Upon the evidence, held, that the respondent erred in disallowing as a deduction for the fiscal year ending March 31, 1941, an amount paid by the corporation for the expenses of a Christmas party for its employees. Held, further, that this amount which was paid to petitioner John E. Liebmann to reimburse him for expenses of this Christmas party is not includible in his income for the year 1940. 5. Upon the evidence, held, that respondent erred in disallowing for the fiscal year ending March 31, 1941, an amount claimed by the corporation for advertising. 6. Upon the evidence, held, that respondent did not err *102 in his determination of the value of the assets which petitioners Abe Wolkowitz, Louis Kramer and John E. Liebmann received upon the dissolution of the corporation. 7. Upon the evidence, held, that respondent did not err in his determination that the petitioners Abe Wolkowitz, Louis Kramer and John E. Liebmann are liable for tax upon a one-third of the income of the Aero Leather Clothing Company, a partnership, for the nine-month period beginning April 1, 1941 and ending December 31, 1941. Held, further, there was a legal valid partnership consisting of six members for the taxable years 1942 and 1943 and the Commissioner erred in not so determining. 8. Upon the evidence, held, the respondent did not err in disallowing certain deductions taken by the partnership in 1941, 1942 and 1943 as business expenses for expenditures made by it for labor and materials on its buildings and equipment. 9. Upon the evidence, held, that the respondent did not err in disallowing certain depreciation for the years 1941, 1942 and 1943 taken by the partnership on its plant and equipment. 10. Upon the evidence, held, that the respondent did not err in disallowing as a deduction certain amounts taken *103 by the partnership in 1942 and 1943 for automobile expenses. 11. Upon the evidence, held, that respondent erred in disallowing certain deductions taken by the partnership in 1941 for legal expenses. He is sustained in his disallowance of certain other items of legal expenses claimed as deductions. Held, further, that respondent erred in disallowing certain deductions taken by the partnership for legal expenses in 1942 and 1943. The amount of such legal expenses which is deductible is determined under the evidence. 12. Upon the evidence, held, that respondent erred in disallowing certain deductions in 1941, 1942 and 1943 for accounting expenses. 13. The credit of the partnership under section 3806, I.R.C. for money paid to the United States Government in 1944 under a renegotiation agreement between the War Contracts Price Adjustment Board and the partnership, covering renegotiation for the fiscal year 1943 is to be determined in accordance with the renegotiation agreement which was entered into and section 3806, I.R.C. as interpreted in National Builders, Inc., 12 T.C. 852 (promulgated May 26, 1949). 14. Upon the evidence, held, that the income tax returns of petitioners *104 Louis Kramer and John E. Liebmann for the years 1940, 1941, 1942 and 1943 were false and fraudulent with intent to evade tax. Held, further, that the return filed by "John E. and Dorothy Liebmann" for the year 1943 was not a joint return and the respondent erred in determining fraud penalties against Dorothy Liebmann. Held, further, that the returns of the petitioner Abe Wolkowitz for the years 1940, 1941, 1942 and 1943 were not false and fraudulent with intent to evade tax and fraud penalties determined by the respondent are not sustained and the deficiency determined against Abe Wolkowitz for the year 1940 is barred by the statute of limitations. 15. Upon the evidence, held, that the respondent erred in determining that certain interest reported by Ralph Wolkowitz in 1943 was the income of Abe Wolkowitz and that certain interest income reported by Samuel H. Liebmann in 1943 was the income of John E. Liebmann. 16. Upon the evidence, held, that respondent erred in determining that certain interest income received by Emily Kramer in 1942 and 1943 was the income of Louis Kramer. Cecil J. McCaffrey, Esq., for the petitioners. William P. Evans, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The respondent in these consolidated proceedings determined deficiencies in income tax, declared value excess profits tax, excess profits tax and 50 per cent penalties, as follows: Aero Leather Clothing Co., Inc.,
Docket No. 15250
1941
Deficiency
Penalty
Income Tax
$ 3,797.19
$ 4,277.34
Declared Value Excess
Profits Tax
1,691.13
2,460.25
Excess Profits Tax
2,127.75
3,123.64
Total
$ 7,616.07
$ 9,861.23
Louis Kramer, Docket No. 15256
1940
$ 381.10
$ 190.55
1941
41,561.27
23,616.67
1942
61,455.08
30,727.54
1943
47,986.86
23,993.43
Total
$151,384.31
$78,528.19
John E. Liebmann, Docket No. 15254
1940
$ 461.61
$ 270.84
1941
39,868.96
22,713.91
1942
60,518.67
30,259.33
Total
$100,849.24
$53,244.08
John E. Liebmann, Docket No. 15251
1943
$ 48,105.08
$24,052.54
Dorothy Liebmann, Docket No. 15257
1943
$ 48,105.08
$24,052.54
Abe Wolkowitz, Docket No. 15249
1940
$ 318.56
$ 159.28
1941
39,227.13
22,384.57
1942
58,870.45
29,435.22
1943
48,884.94
24,442.47
Total
$147,301.08
$76,421.54
*107 The deficiencies are due to numerous adjustments to the net income as disclosed by petitioners in their returns. The deficiencies as to the individual petitioners are due principally to two things, namely: adjustments to the partnership returns of income filed by the Aero Leather Clothing Co. for 1941, 1942 and 1943 and the further determination of the Commissioner that said partnership was composed of three members, Louis Kramer, John E. Liebmann and Abe Wolkowitz and not of six members as claimed by petitioners. Petitioners by appropriate assignments of error contest most of the adjustments made by the respondent for these years. In his answer the respondent affirmatively alleges that petitioners in the above dockets are guilty of fraud for all of the years here involved. The petitioners in Docket Nos. 15256 and 15254, Louis Kramer and John E. Liebmann, respectively, concede fraud for the years 1940 and 1941 and petitioner in Docket No. 15250, Aero Leather Clothing Co., Inc., concedes fraud for the fiscal year ending March 31, 1941. Effect will be given thereto in a recomputation under Rule 50. At the hearing petitioner in Docket No. 15250, Aero Leather Clothing Co., Inc., waived *108 the assignment of error with respect to adjustment (b) which consisted of disallowing travel and entertainment expenses in the amount of $376.43 for the fiscal year ended March 31, 1941. Effect will be given thereto in a recomputation under Rule 50. No evidence was introduced with respect to several issues raised by the pleadings and it is assumed, therefore, that these issues have been abandoned by the petitioners. The issues remaining for our consideration are as follows: 1. Did the respondent erroneously determine that the sales of the Aero Leather Clothing Co., Inc., as reported in its original income tax return for the fiscal year ending March 31, 1941, were understated in the amount of $25,772.21. 2. Did the respondent erroneously disallow certain amounts claimed by the Aero Leather Clothing Co., Inc. as part of the compensation paid its officers during the fiscal year ending March 31, 1941. 3. Did the respondent erroneously disallow as a deduction for the fiscal year ending March 31, 1941, a portion of the amount claimed by the Aero Leather Clothing Co., Inc. as legal expenses. 4. Did the respondent erroneously disallow as a deduction for the fiscal year ending March 31, 1941, an *109 amount paid by the Aero Leather Clothing Co., Inc. to reimburse John E. Liebmann for expenses of a Christmas party for its employees, and erroneously determine that said amount was income to John E. Liebmann. 5. Did the respondent erroneously disallow as a deduction for the fiscal year ending March 31, 1941, an amount claimed by the Aero Leather Clothing Co., Inc. for advertising. 6. Did the respondent err in his determination of the value of the assets which the petitioners Abe Wolkowitz, Louis Kramer and John E. Liebmann received upon the dissolution of the Aero Leather Clothing Co., Inc. on April 1, 1941. 7. Did the respondent erroneously determine that the petitioners Abe Wolkowitz, Louis Kramer and John E. Liebmann are liable for tax upon one-third of the income of Aero Leather Clothing Company, a partnership for nine months of the year 1941, and for the entire years 1942 and 1943. 8. Did the respondent erroneously disallow as business expenses certain amounts expended by the partnership, Aero Leather Clothing Company, for material and labor on its buildings in the years 1941, 1942 and 1943. 9. Did the respondent erroneously disallow certain amounts claimed by the partnership, *110 Aero Leather Clothing Company, for depreciation in the years 1941, 1942 and 1943. 10. Did the respondent erroneously disallow as business expenses certain amounts claimed by the partnership, Aero Leather Clothing Company, as automobile expenses in 1942 and 1943. 11. Did the respondent erroneously disallow as a deduction certain amounts claimed by the partnership, Aero Leather Clothing Company, in 1941, 1942 and 1943 as legal expenses. 12. Did the respondent erroneously disallow as a deduction certain amounts claimed by the partnership, Aero Leather Clothing Company, in 1941, 1942 and 1943 as accounting expenses. 13. Did the respondent erroneously fail to allow the partnership, Aero Leather Clothing Company, a credit in 1943 for a renegotiation payment to the United States Government. 14. Did the respondent erroneously determine fraud penalties against Abe Wolkowitz for the years 1940, 1941, 1942 and 1943 and against Dorothy Liebmann for 1943 and against John E. Liebmann and Louis Kramer for the years 1942 and 1943. These two latter have conceded fraud for the years 1940 and 1941. 15. Did the respondent determine that certain interest income reported on the return of Ralph *111 Wolkowitz was the income of Abe Wolkowitz and certain interest income reported on the return of Samuel H. Liebmann was the income of John E. Liebmann. 16. Did the respondent erroneously determine that certain interest received by Emily Kramer in 1942 and 1943 was the income of Louis Kramer. Findings of Fact In General Petitioners Abe Wolkowitz, Louis Kramer, John E. Liebmann and Dorothy Liebmann are individuals residing in Beacon, New York. The petitioner Aero Leather Clothing Co., Inc. is a corporation organized under the laws of the State of New York on May 18, 1937, with its office located at 79 Ferry Street, Beacon, New York. The returns of petitioners were all filed with the collector for the 14th district of New York at Albany, New York. Both the Aero Leather Clothing Co., Inc. and the successor partnership kept their books on the accrual basis. The corporation used a fiscal year beginning April 1 and ending March 31 of the following year. The partnership used the calendar year basis. Issues 1 to 6. - In September 1936 Louis Kramer, Abe Wolkowitz and John E. Liebmann entered into an informal oral agreement to organize and engage in the business of manufacturing leather *112 clothing under the name of Aero Clothing and Tanning Company with an office located in Brooklyn, New York. In the operation of the business Louis Kramer acted as salesman, Abe Wolkowitz was in charge of production and John E. Liebmann had charge of the office activities, including purchasing and shipping. Ralph Wolkowitz, son of Abe Wolkowitz, was employed as a cutter. He was induced to enter the business at a lower salary than he had been receiving and was promised that after the business grew he would eventually be made a partner. During the period December 1936 to May 1937, Emily Kramer, wife of Louis Kramer, advanced, for the purpose of the business, the amount of $6,000 and they agreed that she would be made a partner later on, if and when the business prospered. At first the business was carried on in Mrs. Kramer's name. It was she who obtained the contract from the government. She alone had the financial responsibility to provide the performance bond that the government required before it would give the contract. Liebmann rented a loft in Brooklyn and they put up a small plant with 10 or 12 machines. They had no credit so they had to pay cash. Mrs. Kramer paid for the machines, *113 bought leather and trimmings and gave them checks for rent and payroll. When the government repaid her for her original expenditures, she paid the tanning company and other expenses owing and gave her husband a certified check for the balance, $4,000. Later she repaid two small loans. Without this $4,000 they could not have started to operate. In all, Mrs. Kramer put $6,000 into the business to start it off. Of the amount of $6,000 which she advanced she was later repaid the amount of $2,000 each by Abe Wolkowitz and John E. Liebmann. In 1937 the business was moved to Beacon, New York. On May 18, 1937, the Aero Leather Clothing Co., Inc. (sometimes hereinafter referred to as the corporation) was incorporated under the laws of the State of New York with an authorized capital stock of 2,000 shares of the par value of $100 each. Louis Kramer was president, Abe Wolkowitz was vice-president and John E. Liebmann was secretary and each owned one-third of the corporation's capital stock. On November 16, 1940, Emily Kramer, out of her own separate funds, advanced the further amount of $4,000 to the corporation for which a note dated November 16, 1940, was made payable to her three months *114 from date. The amount of $4,000 was never carried on the books of the corporation as a debt to Emily Kramer but was treated as a credit to the capital stock account. For the fiscal year ending March 31, 1941, the corporation filed a corporation income, declared value excess profits and defense tax return on June 17, 1941, showing net sales of $262,522.44 and a net taxable income for the fiscal year of $10,267.17. An amended return was filed on February 16, 1943, covering this same period showing net sales of $286,987.39 and net taxable income in the amount of $34,732.12. An examination by revenue agents disclosed that sales on the amended return were overstated in the amount of $4,000, but that when the amended return was filed in 1943 there were omitted therefrom proceeds of sales amounting to $5,307.26 so that the total sales omitted in the original return amounted to $25,772.21. The amounts omitted from the amended return arose from the failure of the corporation to report certain sales paid for by means of postal money orders which were cashed and distributed among the stockholders, which sales were not recorded on the corporation's books. The returns filed by the corporation *115 for the fiscal year ended March 31, 1941, were false and fraudulent and part of the deficiency determined against it for that year was due to fraud with intent to evade tax. The corporation paid salaries to its officers for the fiscal year ending March 31, 1941, as follows: Louis Kramer, president, $13,225; Abe Wolkowitz, vice-president, $7,225, and John E. Liebmann, secretary, $7,225, or a total of $27,675, and deducted this amount in its return for that year. Respondent disallowed the amount of $9,675 and explained this disallowance as follows: "(d) The taxpayer deducted $27,675.00 for salaries to officers of which $9,675.00 is disallowed as excessive and equivalent to distribution of dividends on stock of the corporation owned by the officers, totaling 100% of the stock outstanding. It is held that $6,000.00 per annum is a reasonable salary for each of the three corporation officers." As pointed out above, the business of the corporation was originated by these three officers. Louis Kramer had been in the leather clothing business for approximately 28 years and was the dominant figure in the business. He was the salesman, made the business contacts and brought in the business *116 Abe Wolkowitz has been associated in the leather clothing business with Louis Kramer for approximately 12 years and worked in the factory and acted as production manager. John Liebmann had been connected with the leather clothing business for approximately 25 years. His duties consisted principally of managing the office. John also supervised in the plants some, traveled to tanneries to buy material, inspected the material when it came in and sold commercial products. In 1940 the corporation had approximately 150 employees. Its sales for the fiscal year ending March 31, 1941, were approximately $290,000. Its net taxable income for the fiscal year ending March 31, 1941, after the deduction of salaries to the three officers above, was approximately $35,000. The salaries paid these three officers aggregating $27,675 were reasonable for services performed for the corporation and should be allowed as a deduction for ordinary and necessary business expenses. The corporation paid Carl Silber, its attorney, $1,500 in the fiscal year ending March 31, 1941, as legal fees. The services for which these fees were paid included securing sureties for the corporation on certain contracts, preparation *117 of the necessary legal papers incident thereto, and for other miscellaneous matters connected with the corporate business. Of the amount of $1,500 respondent disallowed the amount of $1,000 as excessive. Respondent, in the explanation attached to the deficiency notice, stated: "(f) The taxpayer paid Mr. Carl Silber $1,500.00 for his efforts in securing the property holders to go bond for the taxpayer on the contracts for the U.S. Government, covering performance of contracts. Of the amount paid to Mr. Silver, [silber] $1,000.00 is disallowed as a deduction, as it is excessive." The legal services rendered by Carl Silber to Aero Leather Clothing Co., Inc. for the fiscal year ending March 31, 1941, were ordinary and necessary business expenses to the corporation and the $1,500 paid him for such services is a proper deduction by the corporation in determining its taxable net income. In its return for the fiscal year ending March 31, 1941, the corporation claimed as a deduction the amount of $672.84 for expenses of a Christmas party for its employees which respondent disallowed. Respondent, in his explanation attached to the deficiency notice, stated: "(d) A deduction of $672.84, *118 covering a check drawn to John Liebmann and cashed by him and charged to general expenses, is disallowed as it has not been substantiated, as being for the benefit of the taxpayer nor as an ordinary and necessary business expense." The respondent included the above amount of $672.84 in the income of the petitioner John E. Liebmann for the year 1940 and in his explanation attached to the deficiency notice stated: "(c) The entire amount of Aero Leather Clothing Co., Inc. check No. 4361 is held to be income to you as you cashed it and are unable to substantiate expenditure for the benefit of the corporation." This amount of $672.84 was paid by the corporation to John E. Liebmann for the purpose of reimbursing him for the expenses of a Christmas party for the employees. During the fiscal year ending March 31, 1941, the corporation had about 150 employees and gifts purchased by Liebmann were presented to those present at this Christmas party and the amount of $672.84 was actually expended for such purpose. The petitioner Aero Leather Clothing Co., Inc. is entitled to a deduction of $672.84 for Christmas party expenses as an ordinary and necessary business expense. This $672.84 was *119 not income to John E. Liebmann. The corporation claimed a deduction of $30 for advertising which respondent disallowed. This amount was expended for advertising in a local dance program. Respondent, in the explanation attached to the deficiency notice, stated: "(c) A contribution of $30.00 to a local political organization is disallowed as it does not qualify as an allowable contribution for income tax purposes." The corporation is entitled to a deduction of $30 for advertising as an ordinary and necessary business expense. It was not expended as a political contribution. On March 31, 1941, the corporation was dissolved and its assets distributed among its three stockholders, Abe Wolkowitz, John E. Liebmann and Louis Kramer. Each of these stockholders realized upon a portion of his stock which cost $2,000 a net longterm capital gain of $2,803.79 and Abe Wolkowitz and Louis Kramer realized upon a portion of their stock which cost $2,333.33 and $2,333.34, respectively, a short-term capital gain of $6,542.16 and John E. Liebmann realized upon a portion of his stock which cost $2,333.33 a short-term capital gain of $6,542.17. Issue 7. - Upon the dissolution of the corporation *120 on March 31, 1941, Louis Kramer, John E. Liebmann and Abe Wolkowitz became the owners of an undivided one-third interest in its assets, acquiring the same they had held in the corporation. On April 1, 1941, these petitioners entered into an agreement whereby Louis Kramer sold to Emily Kramer, his wife; John E. Liebmann sold to his brother, Samucl H. Liebmann, and Abe Wolkowitz sold to his son, Ralph Wolkowitz, an undivided one-sixth interest in and to the assets of the business formerly owned by the corporation. It was agreed that these purchasers should pay for this interest the sum of $3,709.70, which was the stated book value of a one-sixth interest of the assets of the corporation at the time of its dissolution. It was agreed that this sum should be paid as follows: $109.70 on the date of the execution of the agreement and the remaining $3,600 by the execution of four notes in the amount of $900 each, dated October 1, 1941, and payable December 1, 1941, January 2, 1942, February 2, 1942, and March 1, 1942, all without interest. It was agreed that no part of the consideration was given for the good will of the business formerly conducted by the corporation. The agreement recites *121 that the parties should conduct the business as partners under the name of Aero Leather Clothing Company and that the partnership shall begin as of April 1, 1941, and continue for an indefinite period or until terminated by an agreement in writing by the parties. The Aero Leather Clothing Company will sometimes hereinafter be referred to as the partnership. It was agreed that monies deposited in the bank were subject to withdrawal only by check made in the name of the partnership and signed by Louis Kramer alone or by John E. Liebmann and Abe Wolkowitz together, except as otherwise agreed to by the parties, and if any other arrangement should be made in regard thereto it should be in writing and signed by the parties. Each of the parties, Louis Kramer, John E. Liebmann and Abe Wolkowitz was entitled to draw as salary the amount of $350 per week, beginning April 1, 1941. Emily Kramer was to perform any and all the necessary duties in and about the place of business at all times that Louis Kramer was absent and was to receive a salary of $2,000 per annum. Ralph Wolkowitz was to receive a salary of $75 a week beginning April 1, 1941, through September 30, 1941, and $100 a week beginning *122 October 1, 1941, and Samuel H. Liebmann was to receive as salary the amount of $75 a week from July 1, 1941, through September 30, 1941, and $100 a week beginning October 1, 1941. It was provided that profits or losses should be divided equally. Emily Kramer never made any payments on account of the above-mentioned notes. She considered that the $4,000 which the corporation, Aero Leather Clothing Co., Inc. owed her was full payment for her partnership interest. Ralph Wolkowitz did not execute any notes but made weekly payments to his father, Abe Wolkowitz, until he went into the army in September, 1942. No account was kept of these payments. Samuel H. Liebmann executed notes and made weekly payments out of his salary until the amount of $3,709.70 was paid. After the establishment of the partnership on April 1, 1941, in conformity with section 440 of the New York Penal Code, a certificate was filed in the County Clerk's Office of Dutchess County, New York, in May, 1941, stating that the name under which the business was to be conducted was the Aero Leather Clothing Company and that the names of the persons conducting the business were Louis Kramer, John E. Liebmann and Abe Wolkowitz. *123 On May 13, 1941, Carl Silber, attorney for the partnership, wrote a letter to the Fishkill National Bank stating that the partnership consisted of Louis Kramer, Abe Wolkowitz and John E. Liebmann. On May 16, 1941, John E. Liebmann, as secretary of the Aero Leather Clothing Co., Inc., wrote a letter to the Fidelity and Deposit Company of Baltimore, Maryland, stating that all the assets and liabilities of the corporation "are now in the ownership and name of Louis Kramer, John E. Liebmann and Abe Wolkowitz, doing business as Aero Leather Clothing Company, a copartnership." On April 16, 1941, a parcel of real property was acquired from the Beacon Savings Bank, in which deed Louis Kramer, John E. Liebmann and Abe Wolkowitz were named as tenants in common. This property was entered on the books of the partnership as a capital asset at a cost of $3,590.31. On October 10, 1941, the partnership acquired a parcel of real property from the Fishkill National Bank of Beacon, New York, in which deed Louis Kramer, John E. Liebmann and Abe Wolkowitz were named as tenants in common, said deed being recorded in the County Clerk's Office of Dutchess County in Liber 595 of Deeds, page 294. This property *124 was set up on the books of the partnership as a capital asset at a cost of $12,165. On December 31, 1941, there was filed in the County Clerk's Office of Dutchess County a further assumed name certificate stating that the names of the persons conducting the business were Louis Kramer, John E. Liebmann, Abe Wolkowitz, Emily Kramer, Samuel H. Liebmann and Ralph Wolkowitz. Ralph Wolkowitz and Sam Liebmann were reported as employees for social security purposes until September 30, 1941. They were on the books as employees of Aero Leather Clothing Co. until December 9, 1941. On August 17, 1942, Ralph Wolkowitz was inducted into the army. He went into service two weeks later. While he was in the army his father, Abe, handled his affairs. They had a joint bank account and a joint safe deposit box. Both Abe and Ralph have made withdrawals from this account. On August 1, 1942, a further partnership agreement was entered into which stated that Ralph Wolkowitz had been called into military service and had disposed of his partnership interest referred to in the above agreement dated April 1, 1941, to Anna Wolkowitz, his stepmother. A new partnership agreement was thereupon signed between *125 Louis Kramer, John E. Liebmann, Abe Wolkowitz, Emily Kramer, Samuel H. Liebmann and Anna Wolkowitz. This agreement was in most respects identical to the above partnership agreement signed on April 1, 1941. It was provided, however, that the capital of the partnership should be the book value of the said business as it appeared on the books of the Aero Leather Clothing Company as of July 31, 1942. It was further provided that the parties should be entitled to draw as salaries from August 1, 1942, as follows: Louis Kramer, John E. Liebmann and Abe Wolkowitz each $500 per week; Samuel H. Liebmann, $300 a week; Emily Kramer, $2,000 per annum, and Anna Wolkowitz such sum as in the opinion of the parties would be adequate compensation for services rendered by her. On December 4, 1942, a certificate was filed with the County Clerk's Office of Dutchess County, New York, in conformity with section 440 of the New York Penal Code, stating that the persons conducting the business of the Aero Leather Clothing Company were Louis Kramer, Abe Wolkowitz, John E. Liebmann, Emily Kramer, Anna Wolkowitz and Samuel H. Liebmann. Anna Wolkowitz thereafter resigned from the partnership effective as of March 10, 1943. *126 She was never in fact a partner nor was it intended that she should be a partner. She merely took Ralph Wolkowitz's place in form, but not in substance. By a supplemental partnership agreement entered into on January 4, 1943, it was set forth that Anna Wolkowitz had transferred her interest in the partnership to Ralph Wolkowitz and the parties agreed to carry on the partnership under the same terms and conditions as set forth in the partnership agreement dated August 1, 1942, and that Ralph Wolkowitz would receive a salary of $150 per week during the period of his service in the army and upon his discharge he should receive the same compensation as the other partners. Ralph Wolkowitz remained in the army until December, 1945. He returned to the firm and resumed charge of the cutting operations. Ralph Wolkowitz performed no services for the partnership while he was in the army. Samuel H. Liebmann died on September 1, 1944. In his will, dated December 14, 1943, he bequeathed his interest in the partnership one-half each to John E. Liebmann and his sister, Rose Nord. This clause of his will reads as follows: "SECOND. I give and bequeath unto my beloved brother, John E. Liebmann, *127 and unto my beloved sister, Rose Nord, all my right, title and interest in and to the business known as the Aero Leather Clothing Company, the same to belong to them share and share alike." In September, 1944, John E. Liebmann bought Rose Nord's interest, for which he paid $15,000 on account. Any balance that he may owe her is to be paid after the conclusion of these tax proceedings. When Sam quit teaching school June 30, 1941, he was in debt on several loans. When he died he owned, in addition to his interest in the business, insurance, $10,000; government bonds, $27,200; an automobile, $1,200; a ring, $400; two savings accounts totaling $8,326; his brother John's I.O.U. for $10,000; a check for $315; cash, $67, and a checking account (balance not stated). Ralph Wolkowitz, during the year 1941 and during 1942 until he was called into military service, was in complete charge of the partnership's cutting operations. During this period he supervised activities of approximately 45 cutters. As pointed out above, when the business was first started in 1936 he was the only cutter and as business increased additional cutters were hired, whom he trained and supervised. Samuel H. Liebmann *128 had been a school teacher for about 17 years and had taught commercial subjects. He started working for the partnership on July 1, 1941, and was principally in charge of the office operations throughout the balance of the year 1941 and all of the years 1942 and 1943. Emily Kramer did not know much about the actual manufacture of the garments. However, she knew pretty well how things were handled, particularly from the office end. At first the business could not afford a typist so she typed correspondence for Kramer to help him obtain accounts. She was generally familiar with the books and helped out in the office. She also visited the factory to see that nobody was loafing. She generally went to the factory when her husband was out of town and on these occasions she also took telephone calls in the office, wrote correspondence and took care of other matters. At first she was not paid for her services during the period when the earnings of the business were small. Later she was paid something for her services. This was particularly true in 1942 and 1943. In the renegotiation agreement which was entered into in December, 1944, by the Aero Leather Clothing Company, a partnership, *129 and the War Contracts Price Adjustment Board covering the year 1943 it was stated: "This Agreement is entered into as of the day of , 1944, by and between the UNITED STATES OF AMERICA (hereinafter referred to as 'the Government') and Louis Kramer, John E. Liebmann, Abe Wolkowitz, Emily Kramer and Ralph Wolkowitz, co-partners doing business under the firm name of AERO LEATHER CLOTHING COMPANY, having its principal office at 79 Ferry Street, Beacon, New York, and John E. Liebmann as Executor of the Estate of Samuel H. Liebmann, a member of said partnership in the year 1943 and since deceased (all of said partners and the said partnership and said Executor being hereinafter referred to as 'the Contractor')." From the evidence we find, notwithstanding the written partnership agreement dated April 1, 1941, that during the period April 1, 1941, to December 31, 1941, the partnership of Aero Leather Clothing Company was composed of three partners, Louis Kramer, John E. Liebmann and Abe Wolkowitz and each owned a one-third interest therein. During the years 1942 and 1943 we find that the partnership of Aero Leather Clothing Company was composed of six partners, Louis Kramer, John E. Liebmann, *130 Abe Wolkowitz, Emily Kramer, Samuel Liebmann and Ralph Wolkowitz. Each of these partners owned a one-sixth interest in the partnership. The partnership was dissolved on March 31, 1946, in order to reincorporate. At the time of dissolution the capital account of the then five partners (Samuel Liebmann having died in 1944 and his partnership interest having been acquired by his brother, John) stood on the books of the partnership as follows: Credit
Name
Balance
Overdrawn
John Liebmann
$43,870.81
Emily Kramer
55,813.79
Ralph Wolkowitz
53,026.59
Louis Kramer
$15,280.22
Abe Wolkowitz
16,113.35 Upon the advice of attorneys they made the following arrangements to accomplish the change: First, Emily Kramer and Ralph Wolkowitz assumed the debts of Louis Kramer and Abe Wolkowitz, respectively. They then organized the new corporation on April 1, 1946, and transferred to it the total partnership equity. After setting up part of this equity as an advance by officers to pay unincorporated business tax and other obligations of the old partnership, there was left $105,000 against which to issue stock.each of the three who had credit balances in *131 the old partnership (that is Emily Kramer, John Liebmann and Ralph Wolkowitz) received $35,000 par value preferred stock. In addition Louis Kramer, Abe Wolkowitz and John Liebmann paid in $1,000 each for which they received common stock. The partnership filed an original partnership return of income for the nine-month period beginning April 1, 1941, and ending December 31, 1941. It reported net income of $210,710.88 on this return and reported the partners' shares of income as follows: Louis Kramer
$40,655.98
John E. Liebmann
40,655.98
Abe Wolkowitz
40,655.98
Ralph Wolkowitz
30,755.98
Samuel H. Liebmann
29,480.98
Emily Kramer
28,505.98
The Commissioner has added to the $210,710.88 reported on the partnership return, $83,027.98 additional income, making the corrected net income of the partnership $293,738.86 for this period and has taxed it all to the three partners, Louis Kramer, John E. Liebmann and Abe Wolkowitz. The partnership filed an original partnership return of income for the period beginning January 1, 1942, and ending July 31, 1942, and on this return reported net income of $370,154.78 and allocated the respective partners' shares *132 as follows: Louis Kramer
$66,148.02
Emily Kramer
51,814.68
John E. Liebmann
66,148.02
Samuel H. Liebmann
59,948.02
Ralph Wolkowitz
59,948.02
Abe Wolkowitz
66,148.02 The Commissioner in his determination of the deficiencies has reduced the net income reported in this partnership return from $370,154.78 to $337,819.65 and has taxed it all to three of the partners, Louis Kramer, John E. Liebmann and Abe Wolkowitz. For the period August 1, 1942 to December 31, 1942, the partnership filed an original return of income on which it reported net income of $90,522.97. In the return the partners' respective shares of income were allocated as follows: Louis Kramer
$19,209.39
Emily Kramer
9,042.72
John E. Liebmann
19,209.38
Samuel H. Liebmann
14,809.38
Abe Wolkowitz
19,209.38
Anna Wolkowitz
9,042.72 The Commissioner in his determination of the deficiencies has added to the net income reported by the partnership on the return for this period $37,746.57, making total net income of the period of of $128,269.54 and has taxed it all to three of the partners, Louis Kramer, John E. Liebmann and Abe Wolkowitz. For the year 1943 *133 the partnership filed an original partnership return of income and reported thereon net income of $299,548.93 and allocated the partners' respective shares of this net income as follows.. Abe Wolkowitz
$56,968.06
John E. Liebmann
56,968.06
Louis Kramer
56,968.06
Samuel Liebmann
56,968.06
Ralph Wolkowitz
37,708.65
Emily Kramer
32,968.04 The Commissioner in his determination of the deficiencies increased the net income reported on the partnership return by $47,708.71, making a total net income of the partnership for the year 1943 of $347,257.64 and taxed it all to three of the partners, Louis Kramer, John E. Liebmann and Abe Wolkowitz. Issue 8. - In September, 1941, the partnership acquired an old building on which it spent during 1941, 1942 and 1943 various sums for materials, equipment and labor in making it suitable for its manufacturing purposes. It was necessary to install floors, a heating system, new doors, change and repair walls and do painting and miscellaneous repair work. The partnership during the years 1941, 1942 and 1943 expended the respective amounts of $2,395.28, $6,675.19 and $4,151.23 for materials, equipment and labor on this *134 and other buildings which it deducted as an ordinary and necessary business expense. The respondent disallowed the respective amounts of $1,829.03, $6,174.59 and $3,046.37. The expenditures made by the partnership during the years 1941, 1942 and 1943 for these purposes to the extent of $566.25, $500.60 and $1,104.86 are deductible as ordinary and necessary business expenses. Issue 9. - In its tax returns for each of the years 1941, 1942 and 1943 the partnership deducted the respective amounts of $2,315.92, $5,958.98 and $8,472.49 for depreciation of its plant, patterns, buildings and automobiles of which the respondent disallowed the respective amounts of $1,293.50, $2,328.39 and $3,148.22. The partnership claimed a deduction on plant machinery and tools based upon a life of five years. Respondent determined that 8 1/3 years was more representative of the probable life of this equipment. During normal times the leather clothing business is somewhat seasonal and the firm was busiest from about July to November of each year. During the war the factory worked continually six days a week, with overtime. Prior to the war the partnership depreciated its plant, machinery and equipment *135 based upon a life of 10 years and during the years involved herein it depreciated its plant, machinery and equipment based upon a life of five years. The depreciation allowed by respondent for the years 1941, 1942 and 1943 on the partnership's plant, machinery and equipment in the respective amounts of $1,022.42, $3,630.59 and $5,324.27 was reasonable and proper. Issue 10. - In its income tax returns for the years 1942 and 1943 the partnership deducted the respective amounts of $2,440.36 and $3,908.29 for automobile expenses, of which respondent disallowed the respective amounts of $1,220.18 and $500. It was necessary to move materials from one factory to another and the partners' cars were occasionally used for this purpose. The expenditures made by the partnership during these years for automobile expenses to the extent of $1,220.18 for 1942 and $3,408.29 for 1943 are deductible as ordinary and necessary expenses. Issue 11. - In its tax returns for the years 1941, 1942 and 1943 the partnership deducted the respective amounts of $11,850, $37,376.66 and $25,075 for legal fees, of which respondent disallowed the respective amounts of $8,650, $31,376.66 and $12,500. Of the above *136 amount of $11,850 deducted by the partnership for legal expenses during 1941 the amount of $10,000 was paid to Silber. Silber's bill for his services was paid December 31, 1941, and was itemized as follows: TO: AERO LEATHER CLOTHING COMPANY
To Professional Services Rendered: In Re: Negotiations For: (1) Collateral for bid bonds, together
with preparation of all papers
relative thereto, together with
numerous conferences
To expenses and disbursements
in connection with same
$ 8,200.00
(2) All services rendered and had
relative to the dissolution of
corporation (Aero Leather
Company, Inc.)
To expenses and disbursements
in connection with same
250.00
(3) Formation of Partnership, be-
tween Louis Kramer, John E.
Liebmann, and Abe Wolkowitz,
together with preparation of
and filing of all certificates
To expenses and disbursements
in connection with same
350.00
(4) Formation of Partnership, be-
tween Louis Kramer, John E.
Liebmann, Abe Wolkowitz,
Emily Kramer, Samuel Lieb-
mann, and Ralph Wolkowitz,
together with preparation of
and filing of all certificates
To expenses and disbursements
in connection with same
500.00
(5) Main Street, Real Estate pur-
chases, contracts, searches,
closings, conferences, etc.,
To expenses and disbursements
in connection with same
200.00
(6) Other miscellaneous services
rendered together with innu-
merable conferences
To expenses and disbursements
in connection with same
500.00
For Total Services, Etc., Ren-
dered
$10,000.00
*137 In the year 1942 the partnership incurred and paid to Flannery and Supple as legal fees, $5,507 and incurred and paid to the law firm of Supple and Palesi, $10,416.66. These legal fees were paid principally for the services of the law firm in representing the partnership in renegotiation proceedings with the United States Government in the partnership war contracts. Also these lawyers examined and passed upon all the contracts as to form and advised as to their contents. Members of these law firms made frequent trips to Washington, D.C., in connection with the partnership's war contracts with the United States Government. There was incurred by the partnership in 1943 an obligation of $25,000 to the law firm of Supple and Palesi as legal fees. Of this amount $18,750 was paid in 1943 and the remainder of $6,250 was subsequently paid. The legal services for which this $25,000 was incurred and paid were substantially the same as those above described for the year 1942. There was also incurred and paid in 1942 legal fees to Chase National Bank in the amount of $75 for drawing up certain legal papers. Issue 12. - The partnership in its returns for the years 1941, 1942 and 1943 deducted *138 the respective amounts of $2,390, $11,430 and $11,575 for accounting expenses, of which the respondent disallowed the respective amounts of $1,500, $8,830 and $3,600 as excessive. With the exception of $1,600 which was paid for accounting services rendered in renegotiation proceedings, these amounts were paid to the accountant for auditing the partnership's books from time to time and analyzing the cost accounting records for the preparation of bids on various war contracts. The above amount of $1,600 was disallowed as a deduction by the respondent in 1942 as it was paid in 1943. The accounting expense incurred by the partnership during the respective years 1941, 1942 and 1943 to the extent of the respective amounts of $2,390, $11,430 and $11,575 constitutes allowable deductions as ordinary and necessary business expenses in computing its income for these years. Issue 13. - The partnership was renegotiated by the War Contracts Price Adjustment Board for its fiscal year ending December 31, 1943, and as a result it entered into an agreement on or about December 26, 1944, with the War Contracts Price Adjustment Board that its profits for that period were excessive to the extent of $29,111. *139 On December 26, 1944, the partnership paid to the United States Government the amount of $29,111 pursuant to this agreement. This agreement contained, among other things, the following provision: "3. Tax Credit under Section 3806 of the Internal Revenue Code: Of the amount of profits agreed in Article 1 hereof to be eliminated, the greater part thereof has not been included in income in the Federal income tax returns of the partners of the Contractor for said fiscal year, and accordingly, no tax credit under Section 3806 (b) of the Internal Revenue Code is being applied for by the partners in connection with the payment of the amount of profits agreed in Article 1 hereof to be eliminated. In the event, however, that Federal income taxes shall be assessed upon the amount of profits agreed in Article 1 hereof to be eliminated, or any part thereof, there will be allowed to the Contractor the credit, if any, to which the partners are entitled under Section 3806 of the Internal Revenue Code with respect to such profits." Issue 14. - As heretofore set forth, the petitioners Abe Wolkowitz, John E. Liebmann and Louis *140 Kramer filed their income tax returns for the taxable years 1940, 1941, 1942 and 1943 with the collector for the 14th district of New York at Albany, New York. There was [were] not disclosed on their returns for 1940 certain distributions of funds by the Aero Leather Clothing Co., Inc. from the proceeds of sales of products not entered on the corporation's books. These proceeds were divided among Abe Wolkowitz, John E. Liebmann and Louis Kramer, the three stockholders, Abe Wolkowitz receiving $3,250.83 and John E. Liebmann and Louis Kramer each receiving the amount of $3,250.84. During the taxable year 1941 there was not disclosed on the returns of these petitioners distributions of funds of the corporation from the proceeds of sales of products not entered on the corporation's books but which were divided among these stockholders, of which each of the stockholders received the amount of $2,253.83. During 1941, 1942 and 1943 the partnership made certain sales which were paid for by postal money orders and which were not entered on the books of the partnership and were not reported on the partnership income tax returns for these years but the proceeds of which were divided among *141 petitioners Louis Kramer, John E. Liebmann and Abe Wolkowitz and not reported on their income tax returns for these years. The said unreported sales for 1941, 1942 and 1943 were in the respective amounts of $5,943.71, $16,349.84 and $883.19. During the year 1942 certain other items of income were omitted from the partnership books and were not reported on the partnership returns for this period in the total amount of $1,956.73. The return of the petitioners John E. Liebmann and Dorothy Liebmann for the year 1943 bears the capition "John E. & Dorothy Liebmann," Irving Park, Beacon, Dutchess, New York. The return was executed by John E. Liebmann only. The return in question was not the joint return of John E. Liebmann and Dorothy Liebmann but the individual return of John E. Liebmann. A portion of the deficiency in income tax determined by the respondent against John E. Liebmann and Louis Kramer for the taxable years 1940, 1941, 1942 and 1943 was due to fraud with intent to evade tax. A portion of the deficiency of Aero Leather Clothing Co., Inc. for its fiscal year ending March 31, 1941, was due to fraud with intent to evade the tax. The returns filed by Abe Wolkowitz for the years *142 1940, 1941, 1942 and 1943 were not false and fraudulent with intent to evade tax. Issue 15. - The respondent determined that interest income in the amount of $500 on government bonds reported by Ralph Wolkowitz in 1943 was the income of the petitioner Abe Wolkowitz. The respondent determined that interest income in the amount of $625 on government bonds reported by Samuel H. Liebmann in 1943 was the income of the petitioner John E. Liebmann. The Commissioner in his deficiency notice to Abe Wolkowitz stated with reference to this $500 taxed to him as follows: "(a) Interest income in amount $500.00 on Government bonds reported by your son, Ralph Wolkowitz, is held to be your income. The income was on investment of profits of Aero Leather Clothing Co., which firm was, after investigation, held to be a three way partnership and your son was not a partner." This $500 interest was the property of Ralph and not of Abe. The Commissioner in his deficiency notice to John E. Liebmann stated with reference to the $625 interest taxed to him as follows: "(a) Interest income in amount $625.00 on Government bonds reported by your brother, Samuel H. Liebmann, is held to be your income. The *143 income was on investment of profits of Aero Leather Clothing Co., which firm was, after investigation, held to be a three way partnership, of which your brother was not a partner." This $625 was the property of Samuel H. Liebmann and not of John E. Liebmann. Issue 16. - In 1942 Emily Kramer received interest in the amount of $73.16 on money owned by her in her savings account. In 1943 she received interest in the amount of $410.91, which was interest paid on a mortgage owned by her. Opinion BLACK, Judge: We shall consider in their regular order the issues for our disposition: Issue 1. - The question here is whether the respondent erred in determining that the corporation's sales as reported in its original tax return for the fiscal year ending March 31, 1941, were understated in the amount of $25,772.21. The record shows that the corporation filed an amended return for the fiscal year ending March 31, 1941, wherein it reported sales of $24,464.95 which were not reported in the original return. Upon investigation by revenue agents it was disclosed that sales were overstated in this amended return in the amount of $4,000 but that additional unreported sales of $5,307.26 had *144 been made and that postal money orders received in payment for these unreported sales had been cashed and the proceeds distributed among the stockholders and that no records of these sales had been entered on the corporation's books. In its petition the corporation alleges that the respondent erred in determining that the respondent erred in determining that sales in the amount of $5,307.26 were omitted in its amended return, and on brief contends that the evidence discloses that additional sales not reported on its amended return amounted to only $1,413.11, thus making a total understated sales on the original return of $21,878.06. The evidence introduced convinces us that the amount of understated sales omitted from the original return was $25,722.21, as determined by the respondent, and we have found accordingly. Inasmuch as it also appears that this understatement was due to a fraudulent intent to evade tax, we have also found that part of the deficiency determined against the corporation was due to fraud with intent to evade tax. See *145 Aaron Hirschman, 12 T.C. 1223, promulgated June 30, 1949. Issue 2. - The question presented under this issue is whether the salaries paid by the corporation to its three officers for personal services rendered by them during the fiscal year ending March 31, 1941, were reasonable in amount. In its return for this fiscal year the petitioner took a deduction of $27,675 for offiers' salaries. Of this amount the respondent disallowed $9,675 as excessive and equivalent to a distribution of dividends on stock of the corporation owned by the officers. The respondent in determining the deficiencies herein held that $6,000 per annum was a reasonable salary for each of these officers. The applicable statute is section 23 (a) (1) (A) of the Internal Revenue Code. [2]
*146 It is well settled that the question of what constitutes reasonable compensation under the statute here involved is essentially a question of fact to be determined from all of the facts and circumstances in each particular case, and that a determination by the respondent of a reasonable allowance for compensation in a specific case carries a presumption of correctness and places upon the taxpayer the burden of proving that it is entitled to a deduction larger than that determined by the respondent. Miller Mfg. Co. v. Commissioner, 149 Fed. (2d) 421; Draper & Co., 5 T.C. 822; Winter Realty & Construction Co., 2 T.C. 38. In determining whether the particular salaries herein were reasonable, the situation must be considered as a whole and no single factor is decisive. There are various tests which have been commonly applied in determining the reasonableness of the particular salary or compensation, such as the ratio of the particular salary and the aggregate salaries to gross income, the size of the particular business, the extent and scope of the employee's work, the employee's qualifications and contributions to the business venture, amount *147 of salaries paid to the particular employee in prior years, general economic conditions, prevailing salaries paid to employees performing similar services in comparable enterprises, the availability of others to fill the office held by the particular employee, and the salary policy of the corporation as to all employees. See Mertens Law of Federal Income Taxation, Vol. 4, section 25.51. Some of the above factors are present in the instant case and some are not but taking those into account which are present, we think petitioner Aero Leather Clothing Co., Inc. has met its burden of proof and has established that the salaries paid were reasonable. These three officers devoted all of their time to the business and worked long hours. The sales of the corporation for its fiscal year ended March 31, 1941, were approximately $290,000 and its net income after the deduction of salaries was approximately $35,000. The salary of Louis Kramer, president and chief executive officer of the corporation of $13,225 and the salaries of $7,225 each for Abe Wolkowitz, vice-president in charge of production and for John E. Liebmann, secretary in charge of the office and much of the purchases, were reasonable, *148 we think, and we hold that respondent erred in his disallowance of part of these salaries. See Wright-Bernet, Inc. v. Commissioner, 172 Fed. (2d) 343. On this issue the Commissioner is reversed. Issue 3. - This issue concerns the disallowance of $1,000 in attorney fees paid by the corporation to Silber, its attorney. The petitioner corporation in the fiscal year ended March 31, 1941, paid Silber $1,500 in legal fees. Respondent in the deficiency notice disallowed the amount of $1,000 on the ground that it was excessive. Petitioner argues that the respondent has no power to determine whether or not legal fees are excessive where they are actually paid for services rendered, and, therefore, it should be entitled to the full deduction thereof. The evidence clearly shows that Carl Silber was the attorney for the corporation during the fiscal year in question. He rendered to the corporation certain legal services in connection with its business for which the corporation incurred and paid him $1,500. We have no reason to find that they were unreasonable. These legal fees were ordinary and necessary business expenses to the corporation and we think the Commissioner was clearly *149 in error in disallowing them. On this issue the Commissioner is reversed. Issue 4. - The question here is whether the respondent erred in disallowing the amount of $672.84 which was charged to "General Expense." The evidence shows that this amount was paid by the corporation during the fiscal year ended March 31, 1941, to John E. Liebmann to reimburse him for expenses of a Christmas party for the employees. Liebmann testified that the corporation had 150 employees and that he spent this money for the Christmas party which included gifts for those present. After a careful consideration of the evidence, we have concluded and found that the petitioner is entitled to a deduction of $672.84 for these Christmas party expenses as an ordinary and necessary business expense. It follows also that the respondent erred in including the amount of $672.84 in the income of John E. Liebmann for the year 1940 and we so hold. The Commissioner is reversed. Issue 5. - Respondent disallowed the amount of $30 for "Advertising." The evidence shows that this amount was spent for advertising in a local dance program. Respondent contends that this expenditure was merely a contribution to a local political *150 organization. While such an inference might be drawn, we think the evidence disproves it and that the advertising was done in good faith with the expectation of results similar to those derived from advertising in other mediums. We hold that the amount of $30 is deductible as a business expense. Cf. Alexander Sprunt & Son, Inc., 24 B.T.A. 599. Issue 6. - The question here is whether respondent erred in determining that each of the petitioners, Abe Wolkowitz, Louis Kramer and John E. Liebmann, received in 1941 a distribution of the assets of the Aero Leather Clothing Co., Inc. when it was liquidated and dissolved in payment of their stock and realized upon a portion of the stock which cost $2,333.33, $2,333.34 and $2,333.33, respectively, a short-term capital gain in the respective amounts of $6,542.16, $6,542.16 and $6,542.17, and upon another portion of this stock which cost $2,000, a net long-term capital gain of $2,803.79 each. It is now well settled that where a corporation is dissolved and the assets are transferred to a partnership composed of the former stockholders, such stockholders must be regarded as having received their share of the assets and derived income *151 to the extent of the difference between the cost or other basis of the stock and the fair market value of the assets so received. Alice M. Hastings, et al., 8 B.T.A. 670; Arthur H. Lamborn, et al., 13 B.T.A. 177; C. J. Barnard, 18 B.T.A. 1022. The applicable statute is section 115(c) of the Internal Revenue Code. [3] Respondent has determined that the fair market value of the assets received by the petitioners Abe Wolkowitz, Louis Kramer and John E. Liebmann upon the dissolution of the corporation was in the respective amounts of $16,483.07, $16,483.08 and $16,483.08 and they, therefore, realized a gain equal in amount to the difference between these amounts and the cost of their stock as set out above. *152 Respondent's determination is presumed to be correct and the petitioners must establish by competent evidence that the respondent erred in whole or in part in his determination. The only evidence as to the fair market value of the corporation's assets was the testimony of the accountant who testified that the book value of the assets was $22,258.20. He testified that this amount did not include any good will as the corporation's contracts were primarily government contracts. Petitioner has not introduced sufficient evidence to enable us to make a determination as to the value of the assets received by the petitioners upon the dissolution of the corporation. We, therefore, sustained respondent on this issue. Issue 7. - The question presented under this issue was whether the income of the Aero Leather Clothing Company, a partnership, for the period April 1, 1941 to December 31, 1941, and for the years 1942 and 1943 is taxable to the petitioners, Abe Wolkowitz, John E. Liebmann and Louis Kramer as partners, each having a one-third interest in the business, or whether the partnership formed by them and Samuel H. Liebmann, Ralph Wolkowitz and Emily Kramer should be recognized so that *153 with respect to the income for these years the partners, Abe Wolkowitz, John E. Liebmann and Louis Kramer are each taxable only on one-sixth thereof. Respondent determined that the income of the partnership for these years is taxable in equal shares to the petitioners, Abe Wolkowitz, John E. Liebmann and Louis Kramer. He argues that the formal arrangements which were made on or about April 1, 1941, to establish a partnership consisting of these petitioners and Samuel H. Liebmann, Emily Kramer and Ralph Wolkowitz was ineffective to relieve these petitioners from income tax upon a one-third share of earnings of the firm. The question of whether the partnership here in question is real for income tax purposes depends upon whether the parties really intended to join together for the purpose of carrying on the business and sharing in the profits or losses, or both. Their intention in this respect is a question of fact to be determined from the agreement, considered as a whole, and by their conduct in executing its provisions. Commissioner v. Tower, 327 U.S. 280; *154 Commissioner v. Culbertson, 337 U.S. 733, (June 27, 1949). The petitioner contends that there was a valid partnership for tax purposes consisting of the six individuals because Emily Kramer contributed original capital and Ralph Wolkowitz and Samuel H. Liebmann contributed vital services. However, whether the parties contributed original capital or vital services is only one of the circumstances to aid in the ultimate determination of the existence of a bona fide partnership. In Commissioner v. Culbertson, supra, the Supreme Court said: "The question is not whether the service or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purpose for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended *155 to join together in the present conduct of the enterprise. * * *" We shall first take up the nine-month period beginning April 1, 1941 and ending December 31, 1941. The facts show that on April 1, 1941, the corporation, Aero Leather Clothing Co., Inc. ceased business and conveyed all of its assets to its three stockholders, Louis Kramer, John E. Liebmann and Abe Wolkowitz. On or about April 1, 1941, these three stockholders formed a partnership under the name of Aero Leather Clothing Company and ostensibly took in three new partners, Emily Kramer, Samuel H. Liebmann and Ralph Wolkowitz. While the evidence establishes that all of these six individuals signed the written partnership agreement on or about April 1, 1941, the evidence also shows that Emily, Samuel and Ralph were really not recognized as partners throughout the year 1941 and were not recognized as such until on or about January 1, 1942. It, of course, requires no authority to establish the principle that the mere signing of a partnership agreement does not establish a partnership. The evidence in these proceedings shows that notwithstanding the signing of the six-way partnership agreement on April 1, 1941, a certificate *156 was filed in the County Clerk's Office of Dutchess County, New York in May 1941 stating that the name under which the business was to be conducted was the Aero Leather Clothing Company and that the names of the persons conducting the business were Louis Kramer, John E. Liebmann and Abe Wolkowitz. On May 13, 1941, Carl Silber, attorney for the partnership, wrote a letter to the Fishkill National Bank stating that the partnership consisted of Louis Kramer, Abe Wolkowitz and John E. Liebmann. On May 16, 1941, John E. Liebmann, as secretary of the Aero Leather Clothing Co., Inc., wrote a letter to the Fidelity and Deposit Company of Baltimore Maryland, stating that all the assets and liabilities of the corporation "are now in the ownership and name of Louis Kramer, John E. Liebmann and Abe Wolkowitz doing business as Aero Leather Clothing Company, a co-partnership." In view of these facts and other facts which are in the record bearing upon the subject, we think we must hold that the partnership of Aero Leather Clothing Company during the period from April 1, 1941 to December 31, 1941, was composed of three partners, Louis Kramer, John E. Liebmann and Abe Wolkowitz. We hold that the Commissioner *157 did not err in including the net income of the partnership for this period in the income of the three partners above named. But for the years 1942 and 1943 we think the situation is different and that the partnership of six members should be sustained for those two years. At the end of the year 1941, to wit December 31, 1941, an assumed name certificate was filed in which it was stated that the Aero Leather Clothing Company was a partnership composed of Louis Kramer, John E. Liebmann, Abe Wolkowitz, Emily Kramer, Samuel Liebmann and Ralph Wolkowitz. We think that the evidence establishes that throughout the years 1942 and 1943 it was agreed and intended that these six should carry on the partnership of Aero Leather Clothing Company and that they did in fact do so. It is true that when Ralph Wolkowitz went into the army in August 1942 there were some writings purporting to make Anna Wolkowitz a partner to take the place of Ralph, but the testimony at the hearing convinces us that notwithstanding these writings, it was never intended to make Anna a partner and that she was never a partner and that it was the intention of all that in spite of these writings, Ralph should remain a partner *158 in the business. We find from the facts that he did remain a partner throughout the calendar years 1942 and 1943 and was recognized as such. The renegotiation agreement covering the year 1943 between the War Contracts Price Adjustment Board, representing the United States, and the contracting partnership states that the Aero Leather Clothing Company is a co-partnership composed of Louis Kramer, John E. Liebmann, Abe Wolkowitz, Emily Kramer, Ralph Wolkowitz and Samuel Liebmann, then deceased, who was represented by his legal representative, John E. Liebmann. While the renegotiation agreement for the year 1942 is not in evidence, the testimony at the hearing was that it was substantially to the same effect. There is no doubt that Samuel Liebmann and Ralph Wolkowitz rendered important and vital services to the partnership. The nature of these services is detailed in our findings of fact and need not be repeated here. It is true that the services of Ralph were interrupted in 1942 by his induction into the armed forces of the United States. Inasmuch, however, as he was already a partner prior to his induction into the armed forces and was rendering essential and vital services to the partnership, *159 we do not think his induction terminated his membership in the partnership. See Isaac Blumberg, 11 T.C. 663. Now it is true that the services rendered by Emily Kramer to the partnership were not of important consequence. Petitioners concede that in their brief. However, they argue that she was the one who furnished the capital to originally start the business and that she was definitely promised a partnership in the business at some later date when the business had grown and prospered, that when the corporation was dissolved in April 1941 it owed her $4,000 which she left in the succeeding partnership and never made any attempt to collect. This $4,000 constituted her capital contribution to the partnership. We think it was the agreement and intention of the parties that she should be a partner with a one-sixth interest during the years 1942 and 1943. We so hold. Now there is one other thing which requires discussion while we are dealing with this issue and that is the division of the partnership income for the years 1942 and 1943. As we have detailed in our findings of fact the partnership returns filed by Aero Leather Clothing Company for the years 1942 and 1943 allocated *160 larger shares of the partnership income to some than to others. This disparity was doubtless due to the much larger salaries that were granted to some under the written partnership agreement which was entered into by the six, than was granted to others. At any rate, we see no reason to disturb this allocation on the partnership returns as respects the partnership net income which was reported on these returns. In a recomputation under Rule 50 it should not be disturbed, except as to the reduction of income by the Commissioner for the period January 1, 1942 to August 1, 1942. However, the additional partnership income which results from the Commissioner's determination as adjusted by our holdings on the issues here involved should be apportioned equally among the six partners and the partners which we have before us in these proceedings should be taxed only with their one-sixth interest in this additional income. There will be no salaries to be taken into account in apportioning these additional profits because the partnership salaries evidently have already been taken into account on the partnership returns in the allocation of partnership income made to the respective partners. As *161 we have already stated, the partnership income for the period April 1, 1941 to December 31, 1941, should be taxed to the three partners, Louis Kramer, John E. Liebmann and Abe Wolkowitz because of the lack of sufficient evidence to show that Emily Kramer, Samuel Liebmann and Ralph Wolkowitz were partners during this particular period of time. Issue 8. - The question here is whether the respondent erred in disallowing certain deductions taken by the partnership in 1941, 1942 and 1943 as business expenses for expenditures made by it for labor and materials on its buildings and equipment. Petitioner contends that in the years 1941, 1942 and 1943 it expended the respective amounts of $2,395.28, $6,675.19 and $4,151.23 for repairs to its building which are deductible as ordinary and necessary business expenses. Respondent disallowed the respective amounts of $1,829.03, $6,174.59 and $3,046.57 for these years and contends that they were capital expenditures and therefore not deductible. The applicable statute is section 23(a)(1)(A), supra. Respondent's determination is presumed to be correct and the burden is on the petitioners to prove that these expenditures were for repairs and hence *162 deductible as ordinary and necessary business expenses. Petitioners in support of their contention introduced in evidence bills for various items such as electrical supplies, plumbing equipment and supplies, glass, paint, lumber, hardware, window frames, and other items of a similar nature and various labor charges. It is not possible for us to determine from an examination of these bills the facts necessary to a determination of whether the various expenditures were for permanent improvements or were for repairs. As was pointed out in I. M. Cowell, 18 B.T.A. 997 at 1002: "* * * While the characterization of some of the items is such that standing alone or made as periodic repairs they might be deductible as ordinary and necessary expenses, it is impractical from the evidence to make such a detailed classification of the items. Such a classification is not a mere matter of what an item is called, but whether it is a part of the entire capital investment in the improved property. To fix a door or patch plaster might very well be treated as an expense when it is an incidental minor item arising in the use of the property in carrying on business, and yet, as here, be properly *163 capitalized when involved in a greater plan of rehabilitation, enlargement and improvement of the entire property." Respondent, in support of his contention that many of the expenditures in question were capital in nature, introduced in evidence the testimony of a revenue agent who testified that about September 1941 the partnership was expanding its manufacturing capacity and had purchased an old building upon which it had expended various sums during 1941, 1942 and 1943 making it suitable as a factory, such as installing floors, a heating plant, changing and repairing walls, installing new doors, painting and miscellaneous repair work. He further testified that he examined the buildings and the work that had been done and examined the vouchers for the various items of material and inquired as to where it was used and upon this information determined that certain of the expenditures were of a capital nature and that others were properly for repairs. We cannot say, therefore, from the evidence before us that the respondent erred in disallowing the deduction of some of the items as not being ordinary and necessary business expenses. Petitioners contend that if the respondent's position *164 is sustained and a portion of these expenditures is classified as capital expenditures it is entitled to depreciation thereon. The evidence shows that the partnership in its returns for these years made certain deductions for depreciation to its plant, part of which the respondent allowed. It has not been shown, therefore, that the respondent has failed to allow depreciation for these expenditures which should be capitalized. Issue 9. - The question here is whether the respondent erred in disallowing depreciation for the years 1941, 1942 and 1943 in the respective amounts of $1,022.42, $2,328.39 and $3,148.22. The partnership computed depreciation on its plant machinery based upon a five-year life while respondent determined that 8 1/3 years was more representative of the probable life. Petitioners introduced in evidence the testimony of the accountant who testified that before the war the leather clothing business was seasonal, the busiest period being from July to November in each year, whereas during the war the plant worked continuously and therefore depreciation was much greater. He stated that before the war depreciation was based upon a 10-year life for such machinery, whereas *165 during these years depreciation should be based upon a five-year life for such machinery. The accountant did not qualify as an expert on depreciation nor did he claim or demonstrate special qualifications to testify as to the probable life of such machinery and the proper rate of depreciation thereon. The burden of proof was upon the petitioners to overcome the respondent's determination and full information must be presented to show that the rate determined by the respondent was not reasonable. The petitioners must present evidence on the basis of which the correct rate of depreciation may be determined. This the petitioners have failed to do. We, therefore, sustain the respondent's determination on this issue. Issue 10. - The question here is whether the respondent erred in disallowing a portion of the deduction taken by the partnership in 1942 and 1943 for automobile expenses. The partnership in its returns for the years 1942 and 1943 deducted the respective amounts of $2,440.36 and $3,908.29 for automobile expenses, of which the respondent disallowed the amount of $1,220.18 for 1942 and $500 for 1943. The only evidence in the record as to these expenditures is the accountant's *166 testimony that since the partnership had several factories it was necessary to move materials from one plant to another and the partners used their cars for this purpose. We are unable to determine on the record here what part of the deductions so claimed represented ordinary and necessary business expenses and what portion is allocable to the partners' personal use. Respondent's determination is therefore sustained. Issue 11. - The partnership in its returns for 1941, 1942 and 1943 deducted the respective amounts of $11,850, $37,376.66 and $25,075 as legal expenses. Respondent disallowed for these years the respective amounts of $8,650, $31,376.66 and $12,500 as being excessive. The respondent having disallowed the partnership's deductions for legal fees to the extent above stated, the burden of proof is on petitioners to sustain the deductions which were disallowed. The evidence shows that in 1941 the partnership deducted the amount of $11,850 in legal fees of which $10,000 was paid to Silber. Silber's bill introduced in evidence shows that $250 was for services rendered upon the dissolution of the corporation, $850 was for services rendered in the formation of the partnership *167 and $200 was for services rendered in connection with real estate purchases. Since the above amount of $250 was for services rendered to the corporation it was a corporate expense and is not chargeable as a business expense to the partnership. The item of $850 which was for services rendered in the formation of the partnership was an organizational expense. Are legal fees incurred in the organization of a partnership capital expenditures? It is well established that organizational expenses of a corporation are capital expenditures and are not deductible as business expenses. Bush Terminal Buildings Co., 7 T.C. 793; Simmons Co. v. Commissioner, 33 Fed. (2d) 75; First National Bank of St. Louis, 3 B.T.A. 807. Does the same rule apply to partnerships which are not recognized as a legal entity such as a corporation, but rather as a "jural aggregate" composed of the partners as individuals. Cf. Commissioner v. Whitney, 169 Fed. (2d) 562. At common law a partnership was not a person, natural or artificial; as such it was incapable of taking and holding title to real property and the title vested by operation of law in the partners as *168 tenants in common. Curtis v. Reilly, 188 Iowa 1217, 177 N.W. 535. However, under the New York Partnership Law, (same as Uniform Partnership Law) a partnership may own and transfer real property in the firm name. New York Partnership Law, sections 12, 21. Moreover, a partnership may own intangibles such as good will. Arthur P. Williams, 24 B.T.A. 1070; Hill v. Commissioner, 38 Fed. (2d) 165. Thus while a partnership is not a legal entity it nevertheless may acquire and own property, both tangible and intangible, in its own name. Organizational costs which are assets of a permanent nature represent property. We think, therefore, that expenditures made for organization are capital expenditures of the partnership. In Warner Mountains Lumber Co., 9 T.C. 1171, it was pointed out that attorney fees for organizing a syndicate are capital expenditures. Section 3797(a), I.R.C. states that the term partnership includes a syndicate. Respondent is sustained as to this $850. The amount of $200 which was for services rendered in connection with certain real estate purchases is a capital expenditure *169 and not deductible as a business expense. Fifth Street Store, 6 T.C. 664; Andrew J. Pembroke, 23 B.T.A. 1176, affirmed 70 Fed. (2d) 850. Silber, the attorney, testified that he charged the amount of $8,200 for legal fees in connection with the acquisition of sureties and the preparation of performance bonds. The remaining item of $500 was for other miscellaneous services rendered. These two items aggregating $8,700, it seems to us, are clearly deductible as ordinary and necessary business expenses and we so hold as to this $8,700. The Commissioner is reversed. There was no evidence as to the remaining amount of $1,850 paid by the partnership for legal services in 1941 and for lack of evidence the Commissioner is sustained as to the disallowance of this $1,850. The partnership in the years 1942 and 1943 claimed a deduction for legal expenses in the respective amounts of $37,376.66 and $25,075 of which the respondent disallowed the respective amounts of $31,376.66 and $12,500. Our findings of fact on this issue show that the partnership incurred in 1942 legal fees in connection with renegotiation proceedings of $15,923.66 and in 1943 incurred *170 legal fees for the same purposes of $25,000. It seems to us that these amounts are clearly ordinary and necessary business expenses and should be allowed as such in computing the partnership net income for the taxable years 1942 and 1943, respective. We so hold. Although the partnership did not pay but $18,750 of the legal fees incurred in 1943, it kept its books and made its returns on the accrual basis and the entire $25,000 should be allowed as a deduction in 1943. The partnership is also entitled to a deduction of $75 legal fees which it paid Chase National Bank. Issue 12. - The partnership in its returns for 1941, 1942 and 1943 deducted the respective amounts of $2,390, $11,430 and $11,575 for accounting expenses of which the respondent disallowed the respective amounts of $1,500, $8,830 and $3,600. Respondent disallowed these fees on the ground that they were excessive. In his brief he contends that there was no evidence as to the details of the services rendered or whether they were as valuable as claimed. It is not denied that the accountant was paid these sums. The accountant testified as to the services rendered which not only included auditing the partnership books but *171 from time to time analyzing the cost accounting records for the preparation of bids on various war contracts. Respondent disallowed as a deduction in 1942 the amount of $1,600 as it was paid in 1943. However, the record shows that this amount was paid for accounting services rendered in 1942 in renegotiation proceedings and since it was a liability incurred in 1942 and since the partnership books were kept on the accrual basis, it was entitled to accrue this sum. See Albert C. Becken, Jr., 5 T.C. 498. The partnership in its partnership returns of net income is entitled to a deduction as a business expense in 1941, 1942 and 1943 of the respective amounts of $2,390, $11,430 and $11,575 for accounting expenses. These amounts were reasonable payments for services actually rendered to the partnership. Issue 13. - Petitioners contend that respondent failed to allow a credit in 1943 for a renegotiation payment to the government. The applicable statute is section 3806(b)(1), I.R.C.[4] The record shows that the partnership was renegotiated by the War Department for its fiscal year ending December 31, 1943, and an agreement was entered into on or about December 26, 1944, that *172 its profits for the fiscal year ending December 31, 1943, were excessive to the extent of $29,111 and on December 26, 1944, it paid to the government this amount. The provisions of section 3806(b)(1) were recently before us in the case of National Builders, Inc., 12 T.C. 852 (promulgated May 26, 1949). In that case we said: "The correct tax liability of a taxpayer is, in the first instance, to be determined with complete disregard of *173 the fact that the taxpayer may have repaid amounts representing excessive profits to the government incident to renegotiation and in making the payments received the benefit of the credit provided for by section 3806(b)(1). Petitioner's tax liability for 1943 should be computed on the basis of the gross income, deductions, and net income as shown on the return, and such other adjustments as may be required, including any resulting from the instant redetermination, so that the tax as finally computed meets the requirements of the statute. It follows that under this method the full amount of taxes paid by the petitioner should be applied against the total tax liability in determining the amount of any deficiency or overpayment and the respondent should not, in this computation, treat the credits previously computed under section 3806(b)(1) as rebates within the definition contained in section 271(b)(2). It is not until the tax liability as such has been correctly determined that we have a basis for the computation of the credit under section 3806, and if a credit has been allowed for renegotiation purposes prior to the final determination of the tax liability as such, then the credit *174 must be regarded as tentative and must necessarily fluctuate up or down, dependent upon what is finally determined to be the petitioner's correct tax liability." Therefore, in the light of what we said in the National Builders, Inc. case, petitioners' credit under section 3806 should be computed in accordance with the renegotiation agreement which is in evidence and with the rule which we laid down in the National Builders, Inc. case. E. Liebmann and Louis Kramer for the years 1940, 1941, 1942 Issue 14. - The question here is whether respondent erred in asserting fraud penalties against petitioners Abe Wolkowitz, John E. Liebmann and Louis Kramer for the years 1940, 1941, 1942 and 1943 and against Dorothy Liebmann for 1943. The burden of proof is upon respondent to prove that a part of the deficiency for each year is due to fraud with intent to evade tax and this he must do by clear and convincing evidence. Charles E. Mitchell, 32 B.T.A. 1093, affirmed 89 Fed. (2d) 873, 303 U.S. 391. In William W. Kellett, 5 T.C. 608, we pointed out that "to be considered are all the facts and circumstances surrounding the conduct of the taxpayer's business *175 and all the facts incident to the preparation of the alleged fraudulent return." The applicable statute is section 293(b) of the Internal Revenue Code. [5]
It was conceded at the hearing that the understatements of income of the petitioners, Aero Leather Clothing Co., Inc., for the fiscal year ending March 31, 1941, and Louis Kramer and John E. Liebmann for the calendar years 1940 and 1941 resulted from fraud with intent to evade income tax. We hold, therefore, that respondent was correct in determining the fraud penalties for these years with reference to these petitioners. It follows, therefore, that the statute of limitations has not run against the assessment or collection of any deficiencies against these petitioners for 1940. Petitioners Louis Kramer and John E. Liebmann, however, contend *176 that their returns for 1942 and 1943 were not due to fraud with intent to evade tax. Their denial of fraud in the understatement of their income for 1942 and 1943 is based on their claim that the proceeds of certain sales were not left off deliberately in their returns and that it was intended to return all of the omitted income to the partnership books and to report it for taxes. However, the record shows that these petitioners had made a practice of cashing money orders during the period 1940 to and including the month of January 1943 and had divided it among themselves and had not reported it on the partnership books or on their returns for these years. The record shows that in 1942 and 1943 these unreported sales were in the respective amounts of $16,349.84 and $883.19. Under the revenue laws every taxpayer is, in the first instance, his own assessor and this privilege carries with it a responsibility to deal frankly and honestly with the government and to make a full revelation and fair return of all income received. We have, therefore, found as a fact, based on the whole record, that the income tax returns which the petitioners John E. Liebmann and Louis Kramer filed for the *177 years 1942 and 1943 were false and fraudulent with intent to evade tax, and a part of the deficiencies for these years was due to fraud with intent to evade tax. It thus becomes unnecessary to consider the contention of these petitioners relative to the benefits of section 6 of the Current Tax Payment Act of 1943. They could only derive the benefit of that section if we found there was no fraud. Respondent in his determination of the deficiency and fraud penalty for 1943 has included the name of Dorothy Liebmann along with her husband, John E. Liebmann. He has done this on the theory that the income tax return which was filed for the year 1943 was a joint return filed for himself and his wife, Dorothy Liebmann. Although the nature of the return filed by "John E. & Dorothy Liebmann" was put in issue by the pleadings, no proof was submitted by either party whether it was a joint return, other than the return itself. The return was in the name of "John E. & Dorothy Liebmann." Underneath the name on the first line of the return is printed this instruction: "(Use given names of both husband and wife, if this is a joint return.)" Printed below the blank for signatures was the instruction *178 that "(If this is a joint return (not made by agent), it must be signed by both husband and wife.)" Petitioner John E. Liebmann, alone, signed the return. We think the return indicates that the income therein was that of John E. Liebmann. Regulations 111, section 29.51-1, applicable to the taxable year 1943, reads: "A joint return of a husband and wife (if not made by an agent, See section 29.51-2) shall be signed by both spouses. An oath is not necessary, but both spouses shall verify the return as provided in section 51. If signed by one spouse as agent for the other, authorization for such action must accompany the return. (See section 29.51-2.)" As we have pointed out, the return in question was signed by the petitioner John E. Liebmann, alone. We have found as a fact, therefore, that the return filed in 1943 in the names of "John E. & Dorothy Liebmann" was not a joint return of John E. Liebmann and his wife, Dorothy Liebmann. On these facts we reverse the respondent's determination of a deficiency and fraud penalty against the petitioner Dorothy Liebmann for the year 1943. See *179 William W. Kellett, supra. We do not think the evidence herein is sufficiently convincing to support the determination of fraud against Abe Wolkowitz in the years 1940, 1941, 1942 and 1943. It is admitted that he received some of the diverted sales money for these years that was not included in his return. The record shows that he was an uneducated factory worker who took no part in the keeping of the books and merely accepted what was given to him, trusting his partners and unaware that they were guilty of wrongdoing. We are left in doubt as to whether he knew of the undisclosed sales. In fact, from all the evidence, we think he did not know of these undisclosed sales. His income tax returns for these years were prepared by Kanarvogel, the accountant, from the books of the corporation and the partnership. In Mitchell v. Commissioner, 118 Fed. (2d) 308, reversing 40 B.T.A. 424, the court held that fraud within the meaning of the statute is an actual, intentional wrongdoing and the intent required is the specific purpose to evade a tax believed to be owing, and mere neglect, whether slight or great, is not equivalent to fraud. *180 This opinion of the circuit court was followed by us in a supplemental opinion in William E. Mitchell, 45 B.T.A. 822. Therefore, on the facts, we hold that petitioner Abe Workowitz's returns for the years 1940, 1941, 1942 and 1943 were not false or fraudulent with intent to evade tax and the 50 per cent fraud penalties determined are not sustained. In view of this holding, it follows that the assessment or collection of any deficiency against Abe Wolkowitz for the year 1940 is barred by the statute of limitations. We, therefore, hold that the respondent has failed to sustain his burden of proof in establishing that any part of the deficiency in income taxes of the petitioner Abe Wolkowitz for the years 1940, 1941, 1942 and 1943 was due to fraud with intent to evade tax. Petitioners contend, however, that even if we hold that the omission of the sales made from the 1942 and 1943 returns were fraudulent, nevertheless, the fraud penalties should not apply as against petitioners John E. Liebmann and Louis Kramer, as despite these omissions the partnership sales were actually overstated due to the failure to claim a renegotiation credit for these years and that since sales *181 were in effect overstated, no part of the deficiency was due to the fraudulent omissions and thus the penalties should not apply. Petitioners' claim that the partnership sales were in effect overstated for 1942 is based upon the revenue agent's report dated June 7, 1945, wherein certain adjustments were made for the period January 1, 1942 to July 31, 1942, and under adjustments "(j)" thereof stated that the partnership sales for this period were renegotiation of Government contracts in amount $75,000 not claimed on tax returns filed has the effect of showing an overstatement of sales." Petitioners' claim that in effect the partnership sales were overstated for 1943 is based upon the fact that the partnership was renegotiated by the War Department for the fiscal year ending December 31, 1943, and as a result it entered into an agreement with the representatives of the Secretary of War that the profits of this period were excessive to the extent of $29,111. Petitioners maintain that this has the effect of showing an overstatement of sales. This argument is not persuasive. See *182 Aaron Hirschman, supra.In this latter case we held that the taxpayers, having originally filed fraudulent income tax returns, may not by the subsequent filing of amended returns and the payment of the taxes due eliminate the fraudulent elements from their original returns and thereby bar the Commissioner from assessing in respect thereto 50 per cent additions to the tax for fraud under section 293(b), I.R.C.
Issue 15. - The question here is whether the respondent erred in determining that interest income in the amount of $500 on government bonds reported by Ralph Wolkowitz was the income of Abe Wolkowitz and whether interest income in the amount of $625 on government bonds reported on the return of his brother, Samuel H. Liebmann, was the income of John E. Liebmann. The Commissioner's sole ground for taxing these respective amounts of interest to Abe Wolkowitz and John E. Liebmann was on the ground that in 1943 there was a three-way partnership and Ralph Wolkowitz and Samuel H. Liebmann were not members of it. We have found against respondent on this issue. It follows that the interest of $500 here involved belonged to Ralph Wolkowitz and was properly *183 returned for taxation by him and the $625 interest here involved belonged to Samuel H. Liebmann and was properly returned by him for taxation. On this issue the Commissioner is reversed. Issue 16. - Respondent determined that in 1942 interest in the amount of $73.16 on a savings account in the name of Emily Kramer was income on money of Louis Kramer and taxable to him. Respondent also determined in 1943 that interest in the amount of $410.91 on notes in the name of Emily Kramer was income of Louis Kramer and taxable to him. Emily Kramer testified that the moneys in the savings account were her savings and that the interest in the amount of $410.91 was interest on a mortgage owned by her. Upon a careful consideration of the evidence herein we think that the above interest was on money owned by Emily Kramer and the respondent erred in taxing the same to Louis Kramer. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Aero Leather Clothing Co., Inc., John E. Liebmann, Louis Kramer and Dorothy Liebmann.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *↩
3. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * *
(c) Distribution in Liquidation. - Amounts in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * *↩
4. SEC. 3806. MITIGATION OF EFFECT OF RENEGOTIATION OF WAR CONTRACTS OR DISALLOWANCE OF REIMBURSEMENT. * * *
(b) Credit Against Repayment on Account of Renegotiation or Allowance. - (1) General Rule. - There shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior taxable year under Chapter 1, Chapter 2A, Chapter 2B, Chapter 2D, and Chapter 2E, is decreased by reason of the application of paragraph (1) of subsection (a); and there shall be credited against the amount disallowed the amount by which the tax for the prior taxable year under Chapter 1, Chapter 2A, Chapter 2B, Chapter 2D, and Chapter 2E, is decreased by reason of the application of paragraph (2) of subsection (a).↩
5. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2)↩.