Miami Roofing and Sheet Metal, Inc., a Dissolved Florida Corporation v. Commissioner.
Miami Roofing & Sheet Metal, Inc. v. Commissioner
Docket No. 8111.
United States Tax Court
1947 Tax Ct. Memo LEXIS 252; 6 T.C.M. (CCH) 375; T.C.M. (RIA) 47091; April 10, 1947
*252 Philip E. Paine, Esq., 1019 Langford Bldg., Miami 32, Fla., for the petitioner. Edward L. Potter, Esq., and F. L. Van Haaften, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined deficiencies in the petitioner's tax liabilities as follows: Tax
Year
Deficiency
Income tax
1941
$ 294.26
Excess profits tax
1942
18,135.64
Excess profits tax
Period Jan. 1 to Jan. 31, 1943
7,579.38
Declared value excess profits tax
Period Jan. 1 to Jan. 31, 1943
1,250.60
The respondent also asserted a 25 per cent penalty of $1,894.85 against the petitioner for the period January 1 to January 31, 1943. The issues are: (1) The disallowance by the respondent of the following items: (a) The sum of $650, being part of the net loss of $1,121.08 carried forward from 1940 to the year 1941; (b) the sum of $825 in traveling expenses for the year 1941; (c) the sum of $3,636.70 as traveling, living and entertainment expenses of the petitioner's officers deducted in 1942; (d) the amount of $1,341.77 accrued on the petitioner's books as a liability for workmen's compensation insurance in 1942; (e) the sum *253 of $8,000 in the salaries of each of the petitioner's two principal officers paid in 1942; (f) all or portions of the salaries of the petitioner's junior officers and employees in 1942; (g) corresponding sums paid for officers' salaries in the period from January 1 to January 31, 1943. (2) The addition of $7,796.24 to the petitioner's income for the month of January 1943 instead of to a longer period during which the petitioner was engaged in completing its work. The petitioner is a corporation organized under the laws of the State of Florida on May 23, 1934, and dissolved on January 31, 1943. It filed its income tax returns for the taxable years with the collector of internal revenue for the district of Florida. It kept its books on the accrual basis. The petitioner's stock was held by Abe Kohn, its president; Ellard Kohn, its vice president and treasurer; and Leah Kohn, its secretary, one share by each stockholder. The petitioner was engaged in the "roofing and sheet metal work" business. Its principal office and plant was in Miami, Florida, but it fulfilled roofing contracts throughout the southeastern States. During 1942 it engaged in a joint venture with the A. B. Sheet *254 Metal Company of Chattanooga, Tennessee, for the purpose of completing roofing contracts at Camp Pickett, Blackstone, Virginia, and in Goldsboro, North Carolina. The petitioner secured contracts by submitting estimates and bidding for them. The petitioner's officers, Abe Kohn and Ellard Kohn, performed the estimating work for the petitioner. In 1942 Ellard Kohn estimated jobs aggregating about $5,000,000 and procured about $900,000 worth of roofing contracts. Abe Kohn estimated and secured work to the extent of about $600,000 during that year. On small jobs, the customary commission to salesmen for estimating and selling roofing contracts is from 10 per cent to 15 per cent. Such salesmen have nothing invested in the business, do not pledge their personal security for completing the contract, and do nothing toward the performance of the contract. On larger contracts, of perhaps $150,000 or more, an average of 5 per cent is paid for such services. In the respondent's notice of deficiency he refers specifically to the internal revenue agent's report dated May 19, 1944, and that report was admitted in evidence. In his "Explanation of Adjustments" the respondent held that the traveling, *255 entertainment, and living expenses deducted by the petitioner in its income tax returns for the taxable years were "excessive" and disallowed certain amounts which were identified in the revenue agent's report as representing and covering items paid by the petitioner. Other disallowances made by the respondent were adequately described in his notice of deficiency. The facts relating to all these amounts so disallowed are here found in the order in which they appear in the presentation of the issues. The respondent disallowed the amount of $650 as part of the net loss of $1,121.08 carried forward from the year 1940 to the year 1941, and identified the items in the revenue agent's report as being composed of the sum of $250 spent for a Christmas party for the petitioner's employees; two checks for $100 each, numbered 2475 and 2613 and dated March 1, 1940 and March 29, 1940, respectively; one check for $100, numbered 2717, dated April 17, 1940; and one check for $100 dated August 31, 1940, the four checks being stated to have been "drawn to cash and not reconciled to travel actually made", or a total of $650. The amount of $250 was actually expended for the Christmas party, and was *256 a proper deduction. The two checks, numbered 2475 and 2613, were issued by the petitioner pursuant to its attempt to set up a reserve fund but they were never cashed and they were ultimately canceled. No deduction was claimed in petitioner's 1940 return for these two checks and they, therefore, formed no part of the net loss. Check No. 2717 was actually issued for $75, which amount was used for traveling expenses and was properly deductible. No check appears to have been issued for $100 on August 31, 1940, and no check number was given for the alleged expenditure. No deduction was claimed in petitioner's 1940 return for such an expenditure and it formed no part of the net loss of 1940. The aggregate of the above items of $625 was improperly disallowed by respondent in determining the net loss carried forward from 1940 to 1941 and should not have been added to income. The amount of $825 disallowed as traveling expense for the year 1941 was composed of five checks, numbered 4897, 5004, 5014, 5148 and 5257, dated August 30, September 15, September 20, October 25 and November 23, 1941, and in the amounts of $125, $150, $150, $200 and $200, respectively. All of these checks were cashed *257 by Ellard Kohn and the proceeds used to pay his traveling expenses incurred for the petitioner's benefit. During 1941 and 1942, Ellard Kohn traveled extensively for the petitioner throughout the southeastern States. The petitioner had contracts being executed at Key West, Banana River, and Orlando, Florida; in Macon, Georgia, and in other cities, and Ellard Kohn visited Atlanta and Augusta, Georgia; Jacksonville, Florida; Mobile, Alabama, and other cities in connection with preparing estimates and submitting bids for other roofing contracts to be performed by the petitioner. All traveling expenses covered by the above checks were related to Ellard Kohn's various services to the petitioner and were improperly disallowed by the respondent. The amount of $3,636.70 disallowed by the respondent as traveling, living, and entertainment expenses for the year 1942 was listed by the revenue agent as composed of the following items: 1. Seven checks, numbered 5424, 5453, 5532, 5568, 5713, 5729 and 5771, dated January 15, January 20, February 28, March 14, May 27, June 5 and July 15, 1942, calling for $100, $100, $150, $100, $100, $200 and $100, respectively, and aggregating $850; 2. Sums *258 totaling $111.70 expended for a Christmas party in 1942 given for office employees of the petitioner and of Farnell Company, in order to create good will; 3. Expenses of Abe Kohn, the petitioner's president, aggregating $2,675, and itemized as follows: (a) Living expenses 26 weeks at $70
$1,820
(b) Automobile
480
(c) Entertaining
250
(d) Telephone bills
125
The first (No. 5424) of the seven checks listed above, dated January 15, 1942, was for $100 and was issued to reimburse Ellard Kohn for travel expenses. Check No. 5453 was issued to reimburse Frieda Kohn for $100 travel expense advanced by her to Ellard Kohn. Both of these checks were properly allowable as expense deductions. Check No. 5532 was issued to an employee as payment of salary and was therefore deductible as an expense. This check was erroneously listed by respondent in the revenue agent's report as $150 payable to Ellard Kohn. It was actually in the sum of $36.72 payable to Martin Houck. Since the respondent disallowed as a deduction and added to income the sum of $150 on account of this check, that amount should be used in the recomputation under Rule 50. The other four checks were cashed *259 and the proceeds thereof used for the traveling expenses of Ellard Kohn in connection with his trips to Blackstone; Washington, D.C.; Macon, Georgia; Atlanta; Tallahassee and other cities. He traveled thousands of miles, principally by air. The record amply supports the expenditures. The respondent was in error in disallowing the sum of $850 represented by the above seven checks. The amount of $111.70 expended by the petitioner for the Christmas party in 1942 is conceded by the respondent to be deductible. The amounts paid by the petitioner to Abe Kohn, aggregating $2,675, represented his actual expenses in connection with his services to the petitioner on jobs at Macon, Blackstone and Goldsboro. During 1942 he presented to the petitioner his account covering such expenses from September 1, 1941 to March 1, 1942. The petitioner paid that account on June 22, 1942. The respondent, on brief, conceded that some amount is due and suggests the allowance of 60 per cent thereof. We are satisfied that the sum claimed was actually incurred by Abe Kohn and paid by petitioner. We hold that the amount of $2,675 was improperly disallowed. The petitioner accrued on its books in 1942 the sum *260 of $1,341.77, as representing its liability as of December 31, 1942, for workmen's compensation premiums due to an insurance company. The money was never paid to the insurance company. The evidence does not establish that this item represented a fixed and absolute obligation, as distinguished from a contingent liability. Therefore, it was improperly accrued and respondent correctly disallowed the same. The petitioner paid to each of its two principal officers, Abe Kohn and Ellard Kohn, $20,000 as his salary for 1942 and a ratable proportion thereof for the year 1943. The respondent allowed $12,000 as reasonable compensation for the services rendered by each officer during the year 1942. Abe Kohn was a mechanic himself and could take poor mechanics and get the work out. He was unusually competent in his special field. In the joint venture he supervised the sheet metal work and handled the men. Habitually he worked after business hours and sometimes he would work all night. He served as the petitioner's representative on the jobs completed by the joint venture. He took charge of their actual operation and the representative of the A. B. Sheet Metal Company had general supervision *261 of the jobs. Abe Kohn died on January 18, 1945. The evidence establishes that the salaries paid were reasonable for the services rendered to petitioner by the two officers in 1942. The respondent presented no evidence leading to a contrary conclusion. These two men were entirely responsible for procuring contracts, supervising all operations, handling all employees, and financing the work. Leach Kohn was secretary of the petitioner and secretary to her husband, Abe Kohn. In 1941, and until the fall of 1942, she accompanied him on the work being done outside of Miami. She handled all of her husband's correspondence and a considerable amount directly for the petitioner. Sometimes she did such work on the job and sometimes at the hotel at night. During her absence from Miami, her home there was closed. She wrote many business letters and attended to other matters for the petitioner at its office and at her home. The petitioner paid her a salary of $3,000 a year. The respondent allowed the petitioner a deduction of $1,000 for the salary paid to her. The evidence does not establish that the sum allowed by the respondent was not reasonable compensation for her services to the petitioner *262 in 1942. We approve the respondent's determination. Frieda Kohn is the wife of Ellard Kohn. During 1942 her husband, Abe Kohn and Leah Kohn were away from Miami much of the time. During their absence Frieda Kohn was in the petitioner's Miami office almost daily. She and the petitioner's bookkeeper would compute the payroll of employees who were doing local work, she would issue her own check for such amount and later the petitioner would reimburse her. The business done locally by the petitioner would range from $300 to $600 a week. During the daytime Ellard Kohn could not talk with his wife by long distance owing to a lack of priority. Hence, he discussed the business matters of the petitioner with her at night and instructed her how to proceed and how to handle the petitioner's correspondence. The next day she would act accordingly, with the help of the office force. Ellard Kohn returned to Miami at intervals and, with the petitioner's funds, reimbursed his wife for the amounts advanced by her. The petitioner paid Frieda Kohn $3,000 a year as her salary. The respondent disallowed the entire amount. A reasonable compensation for her services to the petitioner in 1942 was $1,000. *263 Victor Kohn was an employee of the petitioner prior to his entry into military service in 1941. The petitioner paid him $3,000 for the year during which he was a member of the armed forces. The respondent allowed a deduction of $1,988.32, an amount equivalent to the largest sum which he had been paid in prior years. That sum is a proper deduction from the petitioner's gross income for 1942. The respondent's action is approved. For the period from January 1 to January 31, 1943, the respondent adjusted the petitioner's deductions for salaries paid to Abe Kohn, Ellard Kohn, Leah Kohn, Frieda Kohn and Victor Kohn on the basis of his disallowance of such salaries for 1942. The compensation above found to be reasonable for their respective services for the year 1942 is applicable for the taxable period in the year 1943. In his notice of deficiency the respondent added to the petitioner's income the sum of $7,796.24 for the taxable period from January 1 to January 31, 1943, with the explanation that "it has been determined that the tax income from the joint venture partnership * * * for the year 1943 was $13,933.64, resulting in a taxable income of $7,796.24 over and above the amount *264 reflected in the original return." The petitioner's original return showed a net loss of $156.74. Although the completion of the joint venture required some attention after the date of the dissolution of petitioner on January 31, 1943, the matters were of minor importance. The evidence is not sufficient to justify the extension of the period of operations after January 31, 1943. On the record made, we hold that the petitioner has not proven the respondent's action to be in error. No evidence was introduced and no argument made as to the delinquency penalty of 25 per cent found by the respondent for the period January 1 to January 31, 1943. We must, accordingly, approve the penalty. Decision will be entered under Rule 50.