Richard Haman and Beverly Haman v. Commissioner.
Haman v. Commissioner
Docket No. 3169-70.
United States Tax Court
T.C. Memo 1972-118; 1972 Tax Ct. Memo LEXIS 142; 31 T.C.M. (CCH) 466; T.C.M. (RIA) 72118; May 22, 1972, Filed. Richard Haman and Beverly Haman, pro se, 210 Sunnybrook Dr., Fortuna, Calif.Harry M. Asch and Joyce E. Britt, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for 1966 and 1967 in the amounts of $2,646.32 and $3,930.75, respectively, and additions to such taxes under section 6653(a) [1] in the amounts of $132.31 and $196.53, respectively. The issues for decision are: 1. Whether the issuance of the deficiency notice in the instant case violated petitioners' constitutional rights; 2. Whether, pursuant to sections 162(a) and 274, respondent properly disallowed portions of deductions claimed by petitioners for the following expenses assertedly incurred by them in their fishing business during 1966 and 1967: (a) costs of provisions, *146 (b) promotional expenses, including: (1) restaurant meals for crew, (2) Christmas parties for crew, (3) entertaining business associates, and (4) gifts to business associates, (c) foreign port expenses, (d) storage of gear and office space, and (e) licensing fees and taxes; 3. Whether respondent properly disallowed a portion of the amount claimed as a deduction in petitioners' return for 1967 under section 167(a) for depreciation of shrimp gear; 4. Whether, under section 46(b), petitioner is entitled to carry an unused investment credit forward from 1965 to 1966 and 1967 without first carrying such credit back to prior taxable years; and 5. Whether any part of any underpayment of petitioners' income tax liabilities for 1966 and 1967 was "due to negligence or intentional disregard of rules and 467 regulations" within the meaning of section 6653(a). Findings of Fact Richard Haman (hereinafter referred to as petitioner) and Beverly Haman, husband and wife, were legal residents of Fortuna, California, at the time they filed their petition. They filed joint Federal income tax returns for 1966 and 1967 with the district director of internal revenue, San Francisco, *147 California. Petitioner is a commercial fisherman and has been engaged in this business for more than 20 years. He owns and operates a 60-foot fishing vessel named Mari-Joann. From this boat, petitioner fishes for tuna, shrimp, and crabs. When fishing for crabs, he usually makes daily deliveries to Eureka, the home port for his boat, located about 17 miles from his residence in Fortuna. When engaged in other kinds of fishing, petitioner is frequently at sea for extended periods. His pursuit of tuna, for example, may take him anywhere along the coast from Mexico to the State of Washington. The Mari-Joann, which is equipped for extended journeys, usually carries a crew of two or three men in addition to petitioner. During 1966 and 1967, petitioner's fishing business produced gross receipts of $66,055.62 and $100,060.12, respectively. Petitioner, his wife, and, sometimes, members of his crew purchased substantial quantities of food and drinks for use on the boat while petitioner and his crew were working. The cash register receipts received on the purchase of these provisions were kept by petitioner's wife in a tin box which she used exclusively for that purpose. In addition, petitioner's *148 wife sometimes took to the boat food which she had prepared at home and food which she had purchased for use at home. A record of the costs of these items was kept by petitioner's wife in a diary. The cash register receipts and the diary indicate that the following amounts were expended for food and drinks to be used on the boat during 1966 and 1967: Costs of
Provisions
1966
1967
From
From
Purchased
Home
Total
Purchased
Home
Total
Jan.
$ 174.12
$167.50
$ 341.62
$ 373.32
$ 59.00
$ 432.32
Feb.
176.20
48.00
224.20
247.59
54.00
301.59
Mar.
237.13
42.00
279.13
78.15
70.00
148.15 Apr.
138.06
31.00
169.06
308.52
55.50
364.02
May
112.98
21.00
133.98
181.66
181.66
June
247.94
247.94
255.95
255.95
July
152.24
152.24
176.91
176.91
Aug.
361.70
11.00
372.70
176.42
176.42
Sept.
148.77
18.00
166.77
291.87
291.87
Oct.
76.92
9.00
85.92
328.94
328.94
Nov.
31.00
31.00
42.50
42.50
Dec.
293.51
23.00
316.51
283.63
36.00
319.63
Total
$2,119.57
$401.50
$2,521.07
$2,702.96
$317.00
$3,019.96 468 During 1966, petitioner was engaged in crab *149 fishing from January through May. From the middle of June until early August, the Mari-Joann was in dry dock in Morro, Bay; during this period. petitioner and one crew member painted the boat and had a refrigeration unit installed. When the reconditioning was finished, petitioner engaged in tuna fishing from early August through October. Petitioner and his crew devoted November to preparing his boat and gear for crabbing and, when the season opened in December, they resumed fishing for crabs. Petitioner engaged in crab fishing from December 1966 through March of 1967. During April, he painted his boat and prepared it to fish for shrimp. From May through the middle of October, petitioner fished for shrimp. In November, he and his crew again prepared the boat to fish for crabs, and in December, they resumed fishing. When in port, petitioner made a practice of occasionally taking his crew to lunch and sometimes to dinner. He did this in order to reward them for their performances and to assure that they would continue to work for him. These meals were provided in addition to their wages and were not treated as compensation for purposes of withholding taxes. During 1966 and 1967, the *150 costs of these meals were $681.23 and $786.21, respectively. These costs were recorded in a diary which petitioner maintained. Entries in this diary also reflected the dates on which petitioner purchased meals for his crew and the places where they were purchased. In addition to these amounts, petitioner spent $100 and $125 during 1966 and 1967, respectively, for Christmas parties for his crew. During 1966 and 1967, petitioner also incurred expenses in taking individuals other than members of his crew to lunch or dinner. These expenditures were recorded in the diary which petitioner maintained. Each entry disclosed the date, the amount spent, and the people present. In addition, some of the entries, in the total amounts of $939.90 and $686.40 for 1966 and 1967, respectively, recorded the business purposes for the meals. During these years, petitioner also made gifts of bottles of liquor to an individual who helped him in his business; these gifts cost $14.80 and $15.20, respectively. As referred to above, petitioner's boat was in dry dock in Morro Bay, California, during the summer of 1966. En route from Eureka, California, to Morro Bay, petitioner stopped at Moss Landing, California, *151 for 2 days while his boat was hauled out of the water. His diary indicates that he spent a total of $44.75 for undisclosed purposes during those 2 days. Leaving Moss Landing, petitioner proceeded to Morro Bay where he was joined by his wife and their 4 children who ranged in age from 7 to 16 years. They spent the next approximately 1 1/2 months waiting for a refrigeration unit to be installed in the boat. During this period, petitioner incurred the following expenses: Transportation to Morro Bay for petitioner's family
$ 98.00
Rent
135.00
Food
1,157.07
Laundry
17.00
Upon leaving Morro Bay, petitioner proceeded to Oregon to fish for tuna. His diary discloses that he spent a total of $195.95 for unidentified purposes while in Oregon; entries in the diary disclose only the date, place, and total amount of the expenditures. Petitioner's wife made three trips to Oregon while he was there. Two of these trips were made to deliver gear which petitioner needed; the third was for an unidentified purpose. On the two trips to Newport, Oregon, to deliver gear, petitioner's wife incurred the following expenses: Transportation
$ 55.00
Lodging
32.00
Food
80.00
Total
$167.00
*152 These expenditures were recorded in a diary which she maintained. During 1967, petitioner made numerous trips, the expenses of which are recorded in his diary. In most instances, however, no indication is given of the purpose for which the trips were taken. Only the following entries reflect a business purpose for the trips: on May 5 to Newport and Garibaldi, Oregon, to look for an unloading dock; on June 15 to Brookings, Oregon, to look into the fishing operations in that area; on September 3 to Brookings and Eureka, Oregon, to check on the recovery of shrimp; and on September 20 to Astoria and Westport, Oregon, to look for a better crab market. However, even with respect to these trips, only the total amount expended for each trip is recorded in 469 petitioner's diary - a total for all such trips of $548.15. The diary gives no indication of the purpose for which each item of expenditure was made. Petitioner's wife also made numerous trips of undisclosed reasons during 1967. Late in June, she and the 4 children moved to Garibaldi, Oregon, for the summer to be near petitioner. She remained in Garibaldi through August; this trip was primarily a vacation for her and the children. *153 Following her stay in Garibaldi, petitioner's wife made two trips to Newport, Oregon, to deliver gear to petitioner. On these trips, she made the following expenditures which she recorded in her diary: Transportation
$ 63.50
Lodging
35.00
Food
161.50
Total
260.00
Each time that petitioner changed the kind of fishing in which he was engaged, he changed the kind of equipment he used on the boat; he carried on the boat only such equipment as was required for the type of fishing in which he was engaged. Crabbing, for example, required the use of crab pots, cages about 42 inches square and 12 inches deep, buoys about 16 to 18 inches long and 5 inches in diameter, and lines to keep the crab pots in place. Petitioner had 538 crab pots, 1,200 buoys, and sufficient line to use them. When not fishing for crabs, these items were stored in sheds which petitioner rented at an annual cost of $396 in 1966 and $456 in 1967. In addition, petitioners used a portion of their 5-bedroom house as an office and as a place to store fishing gear. The entire garage and one of the bedrooms were devoted exclusively to the storage of gear; other gear was stored in closets and other *154 rooms throughout the house. The cost allocable thereto was $200 per year. During 1967, petitioner purchased, at a cost of $12,000, the equipment he needed to fish for shrimp. This equiment consisted of nets, winches and rigging required to operate the nets, and the power take-offs needed to operate the winches. When not fishing for shrimp, most of this gear was stored off the boat in one of the sheds or at his home. During 1967, petitioner paid $300 to the California Department of Motor Vehicles for licensing fees and taxes on his boat and automobiles which he used in his business. In addition, he paid $848.26 to the county tax collector for property taxes on his boat. Also during 1967, petitioner paid $40 and $65 to the California Department of Fish and Game and the Oregon State Fish Commission, respectively, for fishing licenses. In his returns for 1966 and 1967, petitioner claimed the standard deduction allowed by section 144, plus deductions for business expenses, [2] portions of which were disallowed by respondent as follows: *155 1966
1967
Claimed
Disallowed
Allowed
Claimed
Disallowed
Allowed
Provisions
$2,660.28
$2,000.00
$660.28
$1,923.52
$1,000.00
$923.52
Promotions
2,080.00
2,080.00
0
1,790.00
1,790.00
0
Foreign port
2,043.00
1,500.00
543.00
3,766.39
3,000.00
766.39
Storage &
office
1,126.00
1,000.00
126.00
1,416.00
1,000.00
416.00
Taxes &
licenses
912.71
400.00
512.71
1,165.26
600.00
565.26
Depreciation
0
0
0
1,200.00
1,150.00
50.00 Included in the promotional expenses were the costs of meals furnished petitioner's crew off the boat, the costs of annual Christmas parties given for the crew, the costs of entertaining petitioner's business associates, and the costs of gifts purchased for business associates. In addition to disallowing portions of petitioner's claimed business expense deductions, respondent, in his notice of deficiency, 470 determined that petitioner was not entitled to the benefit of an investment credit carryover from 1965 in the amount of $1,837.81 because it had not first been carried back to the three taxable years preceding 1965. Ultimate Findings of Fact Petitioner has substantiated *156 the following amounts of business expenses which he incurred during 1966 and 1967: 1966
1967
Costs of provisions
$1,919.03
$2,605.23
Promotional expenses:
Restaurant meals for crew
681.23
786.21
Christmas parties for crew
100.00
125.00
Entertaining business associates
939.90
686.40
Gifts to business as- sociates
14.80
15.20
Foreign port expenses
[1] 543.00
[1] 766.39
Storage of gear and office space
596.00
656.00
Licensing fees and taxes
[2] 512.71
1,153.26
Depreciation of shrimp gear
0
1,200.00 These amounts include the sums in each category allowed as deductions by respondent. Opinion 1. Constitutional Issue The notice of deficiency recites that some of the disputed deductions were disallowed "to the extent that they have not been substantiated or established to be deductible business expenses under the provisions of sections 162 and *157 274 of the Internal Revenue Code." The petition alleges that the deficiency so determined is "excessive, arbitrary and without rational foundation"; was "found without audit"; was in "retaliation" for petitioners' refusal to execute a waiver extending the period of limitations on assessments; and was "a penalty for the petitioners' refusal to waive their constitutional rights." The evidence does not show that these allegations are true, and petitionrs have not advocated this position either at the trial or on brief. See and compare Arthur Figueiredo, 54 T.C. 1508 (1970), on appeal (C.A. 9, Oct. 14, 1970). Petitioners' only argument based on constitutional grounds is found in their reply brief, where they appear to argue that disallowance of the disputed deductions for "lack of substantiation" was not permissible under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, because respondent allegedly lacked "specific evidence of such a nature that would convince reasonable people that the * * * tax returns were incorrect in specified amounts." The record does not show what information respondent had available when he issued the notice of deficiency, *158 and the adequacy of such information is not an issue properly before this Court. See Arthur Figueiredo, supra; Joseph F. Giddio, 54 T.C. 1530, 1533 (1970), and cases cited. Contrary to petitioners' contention, the mere fact that their tax returns were signed and verified does not constitute a substantiation of their claimed deductions. Seaboard Commercial Corporation, 28 T.C. 1034, 1051 (1957), acq. 1958-2 C.B. 7; Louis Halle, 7 T.C. 245 (1946), affd. 175 F. 2d 500 (C.A. 2, 1949), certiorari denied 338 U.S. 949 (1950). Petitioners have not shown any violation of their constitutional rights. They have the burden of showing that respondent's determinations are erroneous, Welch v. Helvering, 290 U.S. 111 (1933), and they appear to recognize that this is so. 2. Business Expense Deductions As indicated in the list of questions presented for decision and in our Findings, the business expense deductions disallowed for "lack of substantiation" cover a wide range of items. With respect to the costs of (a) boat provisions, (b) promotional expenses, (c) foreign port expenses, (d) *159 storage of gear and office space, and (e) licensing fees and taxes, we must decide whether the expenditures in dispute were "ordinary and necessary" business expenses within the meaning of section 162(a). Further, with respect to the first three of these items, we must decide whether the "directly related" requirements of section 274(a)[3] and the 471 "substantiation" requirements of section 274 (d)[4] apply and, if so, whether petitioner has made the requisite showings. *160 In this connection, section 274, added to the internal revenue laws by the Revenue Act of 1962, provides "additional restrictions * * * on deductions for entertainment and traveling expenses and business gifts." H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 423. These new restrictions are of two types: (1) subsections (a) and (b) disallow certain types of expenses which would otherwise be allowable under section 162 or section 212, and (2) subsection (d) demands "more detailed recordkeeping" than that which had previously been required to support deductions for expenditures for entertainment, traveling, and business gifts. S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 741. This latter requirement was summarized in William F. Sanford, 50 T.C. 823, 829 (1968), affirmed per curiam 412 F. 2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969), as follows: * * * an "adequate" record of an expenditure is defined as an entry in an account book, diary, or similar record, made "at or near the time of the expenditure," and documentary evidence such as a receipt, paid bill, or similar *161 evidence (unless the expenditure is less than $25), which in combination are sufficient to establish each of the elements of the expenditure (amount, time, place, business purpose, and business relationship) for which substantiation is required by section 274(d). Moreover, in the absence of "adequate records," section 1.274-5(c)(3), Income Tax Regs., provides that the taxpayer may alternatively satisfy the substantiation requirements by coming forward with "corroborative evidence sufficient" to support his own statement containing specific information in detail as to each element of the expenditure, or such elements as have not been substantiated by adequate records. And these provisions go on to state that where the unsubstantiated element is the cost, time, place, or date of the expenditure "the corroborative evidence shall be direct evidence, such as a statement in writing or oral testimony of persons entertained or other witness." Less stringent rules are provided, however, where the taxpayer is able to show that, because of the inherent nature of the situation in which the expenditure was made, he was unable to meet either the "adequate records" or the alternative "sufficient *162 evidence" requirements, or where his failure to produce adequate records is due to the loss of such records through circumstances beyond his control. Sec. 1.274-5(c)(4) and (5), Income Tax Regs.
See also Wm. Andress, Jr., 51 T.C. 863 (1969), affirmed per curiam 423 F. 2d 679 (C.A. 5, 1970); John L. Ashby, 50 T.C. 409, 415 (1968). Various exceptions are made to the "directly related" requirements of section 274(a) and the "substantiation" provisions of section 274(d), and those exceptions, particularly pertinent in the present case, must be considered. We turn, then, to consideration of the various items in dispute. (a) Costs of Provisions We consider first the costs of provisions for petitioner's boat. These are the costs of food and drinks used on the boat to feed petitioner and his crew. To the extent such provisions were consumed by the crew, their costs are clearly deductible. This is an additional expense of obtaining help on the boat and is deductible under section 162(a) for the same reason that the wages paid the crew are deductible. Section 274(e)(2)[5] renders the "directly related" requirements of section 274(a) inapplicable *163 472 to food and beverages furnished employees on the business premises of the employer, and section 1.274-5(c)(7), Income Tax Regs., exempts such items from the "substantiation" requirements of section 274(d). To the extent the provisions were consumed by petitioner, different considerations 1 are involved. Obviously, the costs of his food are not in the nature of additional compensation to him. Rather, such costs are similar to the expense incurred by any other businessman for meals during his workday, and they normally constitute nondeductible personal expenditures. Sec. 262; Jerome Mortrud, 44 T.C. 208 (1965). However, to the extent the food was consumed by petitioner "while away from home in the pursuit of a trade or business, " it may be a deductible traveling expense under section *164 162(a)(2). To have been away from home within the meaning of this section, petitioner must have been away from his home port on a journey requiring him to sleep or rest. United States v. Correll, 389 U.S. 299, 303 (1967). [6]
The evidence in the instant case indicates that petitioner was not "away from home" within the meaning of section 162(a)(2) during the periods in 1966 and 1967 when he was fishing for crabs. Consequently, the portions of *165 the costs of provisions procured during those periods which are allocable to petitioner are not deductible. Our Findings reflect this conclusion. The costs of the provisions procured while petitioner was fishing for tuna and shrimp during 1966 and 1967, respectively, and while his boat was being worked on during 1966, on the other hand, were incurred while petitioner was away from home. With respect to the costs of the provisions used on petitioner's boat while he was away from home, we think the requirements of section 274 have been met. Taking into account petitioner's trade or business as a commercial fisherman, the travel here involved is clearly not "of a type generally considered to constitute entertainment." Sec. 1.274-2(b)(1)(ii), Income Tax Regs. Consequently, deductions for the costs of such travel are not restricted by section 274(a). However, such costs constitute traveling expenses which, in order to be deductible, must be substantiated by adequate records or by sufficient evidence corroborating petitioner's own statement, showing (sec. 274(d)): "(A) the amount of such expense * * *, (B) the time and place of the travel * * *, [and] (C) the business purpose of the *166 expense." The costs of the provisions which petitioner used on the boat have been adequately established by cash register receipts obtained on the purchase of such items. These receipts were kept in a tin box used exclusively for this purpose. The business purpose for petitioner's trip to Morro Bay has been adequately substantiated by the testimony of petitioner and his wife and by notations in her diary. We think also that the business purpose of petitioner's fishing trips "is evident from the surrounding facts and circumstances" so that no "written explanation of such business purpose * * * [is] required." Sec. 1.274-5 (c)(2)(ii)(b), Income Tax Regs. So, too, the "time" and "place" of petitioner's trip to Morro Bay, California, for boat repairs have been substantiated by notations in his wife's diary. While the times and places of petitioner's tuna and shrimp fishing trips are not so well substantiated, we think they are adequately verified by reference to all the surrounding facts and circumstances. That petitioner was away from home on fishing trips of substantial duration is apparent when one considers the distance from his home port to the various ports at which both his *167 and his wife's diaries show he stopped. Giving due consideration to the nature of petitioner's business, we think his evidence meets the substantiation requirements. See sec. 1.274-5(c)(4), Income Tax Regs.
(b) Promotional expenses Under this heading, petitioner claimed, and respondent disallowed, deductions for (1) restaurant meals for his crew, (2) 473 Christman parties for his crew, (3) expenses incurred in entertaining business associates, and (4) gifts to business associates. (1) Restaurant meals for crew. The costs of the meals which petitioner purchased for his crew in various restaurants constitute deductible expenses. He purchased these meals in order to reward his crew for their efficient performances and to assure that they would continue to work for him. Thus, the costs of these meals were "ordinary and necessary" business expenses within the meaning of section 162(a). Section 274(a) does not apply to these expenses. Taking into account "the surroundings in which furnished, the taxpayer's trade, business, or income-producing and the relationship to such trade, business, or activity of the persons to whom the food and beverages" were furnished, we conclude that *168 these meals were furnished under circumstances which meet the requirements of section 274(e)(1)[7] and, therefore, need not meet the section 274(a) requirements. Sec. 1.274-2(f)(2)(i), Income Tax Regs. They were eaten during periods of fishing activity and in places were fishermen frequently ate. The individuals to whom the meals were furnished were members of petitioner's crew. Their wives were not present. We think it clear that petitioner purchased these meals "for the primary purpose of furthering * * * [his] trade or business and * * * [that they] did not primarily serve a social or personal purpose." Sec. 1.274-2(f)(2)(i)(c), Income Tax Regs.
*169 * * * With respect to the meals he purchased for his crew, petitioner has met the substantiation requirements of section 274(d). Each time he purchased such a meal, he recorded in his diary: the total amount spent; the date and place where the meal was purchased; and the individuals participating in the meal. As to the crew, we think "the business purpose of * * * [each] meal is evident from the business relationship to the taxpayer of the persons entertained" so that "a written explanation of such business purpose" is not required. Sec. 1.274-5(c)(2)(ii)(b), Income Tax Regs.
However, other individuals were also present at some of the meals, and no evidence relating to their business relationship to petitioner has been introduced. As to them, petitioner has failed to carry his burden of substantiating in the manner required by section 274(d), either that the food and beverages were furnished under circumstances that satisfy any of the provisions of section 274(e), or that the costs incurred for their meals were "directly related to * * * the active conduct of * * * [his] trade or business" within the meaning of section 274(a)(1)(A). Our Findings allow deductions only for the *170 portions of the costs of the meals which are allocable to petitioner's crew Sec. 1.274-5(c)(6)(ii), Income Tax Regs.[8]
(2) Christmas parties for crew. We hold that the costs of the Christmas parties which petitioner gave for his crew in 1966 and 1967 are deductible business expenses under section 162(a). [9] Furthermore, these outlays were recreational expenses for employees within the meaning of section 274(e)(5)[10] and, therefore, the requirements of section 274(a) need not be met. Sec. 1.274-2(f)(2)(v), Income Tax Regs. And the substantiation rules of sectin 274(d) do not apply to these expenses "except that a taxpayer shall keep such records or other evidence as shall establish that such expenses were for activities * * * primarily for the benefit of employees other than employees *171 who are officers, shareholders or 474 other owners * * *, or highly compensated employees." Sec. 1.274-5(c)(7)(ii), Income Tax Regs. The entries in petitioner's diary relating to the Christmas parties show that they were given for his crew, and none of the crew members owned any interest in his business. We think petitioner's records meet the requirements of the regulations. (3)Entertaining business associates. Other entries in petitioner's diary relate to food and drinks which he purchased *172 for various named individuals. Most of these entries fail to indicate the reason by petitioner entertained such individuals, and this deficiency in petitioner's records has not been remedied by any other evidence. See sec. 1.274-5(c)(3), Income Tax Regs. However, some of the entries reflect the reasons certain individuals were entertained. These reasons, including discussions of contemplated purchases of fishing gear and "payment" for services rendered or to be rendered by the individuals entertained, were directly related to the active conduct of petitioner's trade or business. Sec. 1.274-2 (c)(3) and (5), Income Tax Regs. Only the expenditures shown to have been incurred for a business reason are deductible. Sec. 162(a); Sec. 274(a)(1)(A). As to these meals, the entries in petitioner's diary meet the substantiation requirements of section 274(d). The allowable amounts are shown in our Findings. (4) Gifts to business associates. During 1966 and 1967, petitioner purchased liquor which he gave to an individual who helped him on his boat during those years. The amounts of these gifts ($14.80 and $15.20 in 1966 and 1967, respectively) did not exceed $25 for any one individual so that *173 such expenditures are deductible in full. Sec. 274(b)(1). [11] The entries in petitioner's diary disclose the costs of the gifts, the dates on which they were made, the nature of the gifts, and petitioner's reasons for making them. These records constitute sufficient substantiation; petitioner is entitled to deductions for the cost of these gifts. Sec. 1.274-5(c)(2)(i) and (iii), Income Tax Regs.
(c) Foreign port expenses Petitioner claimed "foreign port expense" - costs of food and lodging incurred while traveling away from his home port - in the amounts of $2,043 and $3,766.39 for 1966 and 1967, respectively. Respondent allowed deductions of $543 and $766.39, respectively, for such years. We do not think petitioner has shown that he is entitled to any further deductions for *174 these items. To be deductible, expenses in this category must be shown to have been incurred on a trip "related primarily to the taxpayer's trade or business," sec. 1.162-2(b)(1), Income Tax Regs., and the business purpose for the trip must be substantiated in the manner prescribed by section 274(d), quoted in footnote 4 above. With respect to those trips on which petitioner's wife and children accompanied him, the expenses attributable to his family members are deductible only if it is shown that their travel had a bona fide business purpose. See sec. 1.162-2(c), Income Tax Regs. The performance of some incidental services by petitioner's family while on the trip, however, is not sufficient to establish the requisite business purpose for their travel. With respect to many of the trips taken by petitioner and his wife, the business purpose has not been substantiated either "by adequate records or by sufficient evidence corroborating * * * [their] own statement." Sec. 274(d). Indeed, no purpose for the trips was expressed either in the diaries which petitioner and his wife maintained or in the testimony which they presented to this Court. Nor can such a purpose be inferred from *175 the surrounding facts and circumstances. See sec. 1.274-5(c)(2)(ii)(b), Income Tax Regs.
Some of the other trips were taken by petitioner and his crew to seaport towns. We think an adequate showing of the business purpose for these trips has been made. However, with respect to these trips, only the total amount expended was recorded in petitioner's diary. Such entries give no indication of the purpose for which each expenditure was made - i.e., whether for food, lodging, transportation, or other traveling expenses - and, therefore, do not meet the requirement that each expenditure be adequately substantiated. Sec. 1.274-5(c) (6), Income Tax Regs. Nor has this deficiency in petitioner's records been remedied by any other evidence presented in this case. 475 However, some of the "foreign port" expenses - the expenses allocable to petitioner during his stay in Morro Bay in 1966 - have been adequately substantiated and are deductible business expenses. Sec. 1.274-5(c) (6)(ii), Income Tax Regs. While it has not established that the presence of petitioner's wife and children in that town served a bona fide business purpose, [12] petitioner's presence was clearly motivated by business *176 considerations and the costs of his stay are deductible. [13] Also deductible are the costs of the trips made by petitioner's wife during 1966 and 1967 to deliver fishing gear. These trips were business motivated. The expenses incurred on all these trips have been separately stated in the diary petitioner's wife maintained, except that the costs of meals have been aggregated as allowed by section 1.274-5(c)(6)(i)(b), Income Tax Regs. The total amounts of these substantiated expenses, however, do not exceed the amounts in this category allowed by respondent. *177 (d) Storage of gear and office space Petitioner has also claimed deductions for the costs of storage space for his fishing gear and office space for his business. Much of the storage space was rented by petitioners, and deductions for the rental payments are allowable in the amounts set forth in our Findings. In addition to such rental payments, deductions have been allowed for the costs incurred in using a portion of petitioners' residence for storage and office space. The amount of these additional deductions has been based upon an allocation of the estimated costs of maintaining petitioners' residence. International Artists, Ltd., 55 T.C. 94, 105, (1970); Rev. Rul. 62-180, 1962-2 C.B. 52. (e) Licensing fees and taxes Deductions were also claimed for licensing fees and taxes paid on petitioner's automobiles and his boat and for fishing licenses obtained from the States of California and Oregon. After carefully reviewing the record in this case, we find that the amounts of these items set forth in our Findings were ordinary and necessary expenses incurred in carrying on petitioner's business and are deductible under section 162(a). We have reduced *178 the amount of the allowable deductions for taxes by $100 to reflect the fact that his automobiles were used for personal as well as business purposes. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). 3. Depreciation of Shrimp Gear In his return for 1967, petitioner claimed a deduction for depreciation for the shrimp gear which he added to his boat during that year. Respondent disallowed a portion of this deduction on the ground that petitioner's $12,000 "cost basis as reported on * * * [his] return * * * [had] not been substantiated in the amount claimed." At the trial of this case, petitioner stated that he does "not contest the Commissioner's determination as to the amount of expenses allowed on the return to be capital in nature." And in response to a question of the Court - "You're not claiming any larger amount of depreciation?" - petitioner replied, "No." However, taking into account the entire record on this point and the fact that petitioner appeared pro se, we construe his concession to be conditioned on the treatment of his expenditure for the shrimp gear as an ordinary expense deductible under section 162(a). Clearly, we think, the purchase of *179 the shrimp gear constitutes a capital expenditure for which no ordinary expense deduction is allowable. Sec. 263(a)(1); [14]sec. 1.263(a)-2(a), Income Tax Regs. The only deduction to which petitioner is entitled with respect to such equipment is that provided by section 167(a) - a "reasonable 476 allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)." Petitioner has shown that the cost basis for depreciation purposes, set forth in his return ($12,000), is correct. 4. Investment Credit Next we consider petitioner's contention that his excess investment credit from 1965 need not first be carried back to the preceding taxable years, but may, at his option, be carried forward only. Section 46(b)(1) provides: SEC. 46. AMOUNT OF CREDIT (b) Carryback and Carryover of Unused Credits. - (1) Allowance of credit. - If the amount of the credit determined under subsection (a)(1) for any taxable *180 year exceeds the limitation provided by subsection (a)(2) for such taxable year (hereinafter in this subsection referred to as "unused credit year"), such excess shall be - (A) an investment credit carryback to each of the 3 taxable years preceding the unused credit year, and (B) an investment credit carryover to each of the 7 taxable years following the unused credit year, and shall be added to the amount allowable as a credit by section 38 for such years, except that such excess may be a carryback only to a taxable year ending after December 31, 1961. The entire amount of the unused credit for an unused credit year shall be carried to the earliest of the 10 taxable years to which (by reason of subparagraphs (A) and (B)) such credit may be carried, and then to each of the other 9 taxable years to the extent that, because of the limitation contained in paragraph (2), such unused credit may not be added for a prior taxable year to which such unused credit may be carried. * * * This statutory language is clear and unambiguous; it leaves no room for petitioner's argument. He must first carry his unused investment credit from 1965 back to 1962; any portion unused in 1962 may be *181 carried successively to 1963 and 1964. Petitioner has failed to carry his burden of showing the unused 1965 credit would not be dissipated through carryback to such prior years. [15]
5. Additions to the Tax Section 6653(a) provides for the imposition of an addition to the tax if the taxpayer's underpayment "is due to negligence or intentional disregard of rules and regulations." In applying this section, it is held that "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner, 380 F. 2d 499, 506 (C.A. 5, 1967), affirming on this issue 43 T.C. 168 (1964), certiorari denied 389 U.S. 1044 (1968). Petitioners have the burden of showing that respondent's determination is erroneous. As noted in our Findings, petitioner's sales exceeded $65,000 in 1966 and $100,000 in 1967. His records consisted primarily of original receipts, invoices, or canceled checks for various expenditures and daily *182 diaries maintained by him and his wife. The diaries contain many entries extraneous to the business as well as entries which are not sufficiently informative to support claimed deductions. In making our Findings, we have been compelled to piece together the facts from these various documents as explained in the oral testimony which we found to be basically credible. Our Findings reflect that the records were inadequate with respect to many items. Petitioners offered no explanation of the inadequacy of their records. We conclude that petitioners have not shown that respondent erred in determining that they are liable for the additions to the tax prescribed by section 6653(a). Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. At the trial, petitioner produced records indicating that some of the deductions claimed in his return were understated and he claims deductions for the full amounts substantiated.↩
1. These amounts were allowed by respondent and are not here in dispute. Petitioners have failed to show that they are entitled to deduct any greater amounts. ↩
2. This is the amount allowed by respondent. At the trial, petitioner conceded that he is not entitled to deduct any larger amount.↩
3. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) Entertainment, Amusement, or Recreation. - (1) In general. - No deduction otherwise allowable under this chapter shall be allowed for any item - (A) Activity. - With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to * * * the active conduct of the taxpayer's trade or business, or * * * ↩
4. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (d) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩
5. SEC. 274. DISALLOWANCE OF CERTAIN entertainment, etc., expenses./ (e) Specific Exceptions to Application of S1bsection (a). - Subsection (a) shall not apply to - * * * (2) Food and beverages for employees. - Expenses for food and beverages (and facilities used in connection therewith) furnished on the business premises of the taxpayer primarily for his employees. * * *↩
6. Rev. Rul. 55-235, 1955-1 C.B. 274, is, in part, as follows: Crew members of a commercial fishing boat have their principal or regular post of duty at the home port where they ordinarily, or for an indefinite (as distinguished from a temporary) period, begin and end their fishing trips. Thus, they may deduct the reasonable and necessary expenses actually incurred by them for travel, meals, and lodging when on a business trip requiring their absence from such home port for a minimum period which lasts substantially longer than an ordinary day's work and during which their duties require them to obtain necessary sleep while away from such home port. See Rev. Rul. 54-497, C.B. 1954-2, 75↩. * * *
7. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (e) Specific Exceptions to Application of Subsection (a). - Subsection (a) shall not apply to - (1) Business meals. - Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion.↩
8. The evidence indicates that the size of petitioner's crew varied between two and three men. Because the number of the crew at any given time is not shown, and because petitioner has the burden of proof, we have viewed the evidence in the light least favorable to him - i.e., that the crew consisted of two men - in making the allocation provided for in sec. 1.274-5(c)(6)(ii), Income Tax Regs.↩
9. See Abe Wolkowitz, a Memorandum Opinion of this Court dated Aug. 25, 1949, 8 T.C.M. 754, 767; Miami Roofing &sheet Metal, Inc., a Memorandum Opinion of this Court dated Apr. 9, 1947, 6 T.C.M. 375↩, 377. 10. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (e) Specific Exceptions to Application of Subsection (a). - Subsection (a) shall not apply to - * * * (5) Recreational, etc., expenses for employees. - Expenses for recreational, social, or similar activities (including facilities therefor) primarily for the benefit of employees (other than employees who are officers, shareholders or other owners, or highly compensated employees). * * *↩
11. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (b) Gifts. - (1) Limitation. - No deduction shall be allowed under section 162 or section 212↩ for any expense for gifts made directly or indirectly to any individual to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the same taxable year, exceeds $25. * * * * * *
12. Petitioner's wife testified that during her stay in Morro Bay, she purchased gear for petitioner and helped on the boat. We think these services were merely incidental in nature and do not show a bona fide business purpose for her presence. Sec. 1.162-2(c), Income Tax Regs.↩ This is also true with respect to petitioner's children. We note that both the 1966 and 1967 trips lasted throughout most of the summer months - periods during which the children were on vacation from school. Furthermore, most of the entries in petitioner's wife's diary for the 1967 trip indicate a personal, rather than a business, purpose for her presence. We think that both trips were in the nature of summer vacations for petitioner's family. 13. Taking into account that petitioner spent most, if not all, of his time during the summer of 1967 fishing on his boat, we have been unable, on the basis of the evidence presented, to determine the portion, if any, of the expenses incurred during that summer by petitioner's family which is property allocable to him. Since the burden is on petitioner to maintain records sufficient to make such an allocation, we have determined that all the expenditures recorded in his wife's diary were made for the benefit of her and the children. Consequently, no portion of those expenses is deductible.↩
14. SEC. 263. CAPITAL EXPENDITURES. (a) General Rule. - No deduction shall be allowed for - (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *↩
15. Cf., e. g., Walter Wilson Flora, T.C. Memo. 1965-64, 24 T.C.M. 333; Benjamin S. Dowd, T.C. Memo. 1961-238, 20 T.C.M. 1220↩.